The SOUTH CAROLINA NATIONAL BANK, as the Trustee, and Gordon K. Billipp and Elizabeth W. Billipp, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

C. Donald STONE; James A. Stone; Buchanan & Co.; Robert M. Buchanan; Unico Development Services, Inc.; United Medical and Surgical Supply Corporation; C. Benjamin Smith; Ann H. Smith; Benan, Inc.; Retirement Horizons, Inc.; Tom L. Sizemore; John J. Bandy, Sr.; Kenny O. Merritt; Rickey Merritt; Horace C. Smith; J.W. Wakefield; Harold Fleming; Heritage Living Centers, Inc.; J.R. Randall; Joanne J. Randall; Parker & Kotouc, a Partnership; Thomas O. Kotouc; Low & Furby, a Partnership; John T.C. Low; Whiteside, Smith, Jones & Duncan, a Partnership; May Zima & Co., individually and as Class Representative of a Defendant Class described herein, Defendants.

Civ. A. No. 7:88-79117.

United States District Court,
D. South Carolina,
Spartanburg Division.

July 25, 1990.

William Llewellyn Pope, Pope and Rogers, Columbia, S.C., Thomas Allen Hutcheson, Charleston, S.C., Michael Rediker, David Donaldson, David Guin, Ritchie & Rediker, Birmingham, Ala., for plaintiffs South Carolina Nat. Bank, Gordon K. Billipp and Elizabeth W. Billipp.

C. Donald Stone, Greenville, S.C., pro se.

James A. Stone, Greenville, S.C., pro se.

Robert M. Buchanan, Buchanan & Co., Jackson, Miss., pro se.

Unico Development Services, Inc., Greenville, S.C., pro se.

United Medical & Surgical Supply Corp., Greenville, S.C., pro se.

Retirement Horizons, Inc., Montgomery, Ala., pro se.

Joseph M. Jenkins, Jr., Horton, Drawdy, Ward & Johnson, P.A., Greenville, S.C., for defendant J.R. Randall.

Joanne J. Randall, Greenville, S.C., pro se.

Wilmot B. Irvin, Glenn, Irvin, Murphy, Gray & Stepp, Robert Erving Stepp, Columbia, S.C., Geoffrey B. Schwartz, M. Kay Simpson, Thomas J. Guilday, Huey, Guilday, Kuersteiner & Tucker, Tallahassee, Fla., for May Zima & Co.

Robert Erving Stepp, Columbia, S.C., for defendants Judith Baker, Maurice A. Barineau, William J. Boshell, Edwin Chase, Redford A. Cherry, Charles B. Eldridge, Rene G. Fernandez, William L. Gaddoni, Harry G. Harrell, David M. Johnston, Robert L. Johnson, Charles L. Lester, Robert D. May, Ronald R. Moats, Robert E. Salveson, William Schapley, Marvin Shams, John P. Thomas, John P. Vodennicker, Wallis L. Walker, Jr., David P. Yon, John A. Vonkosky, Richard M. Young and Donald A. Zima.

## MEMORANDUM OPINION AND ORDER

JOSEPH F. ANDERSON, JR., District Judge.

On June 12, 1990, the Court conducted a final hearing in this cause with respect to whether the several settlement agreements by and between the Plaintiffs and certain Defendants described further herein should or should not be approved.

Prior to the June 12, 1990 hearing, the Court reviewed the extensive record in this action, including numerous affidavits filed by Plaintiffs' counsel and the indenture

trustee concerning the notice given to members of the Plaintiff Class by publication and by mail, briefs in support of the proposed settlement filed by the Plaintiffs, the Defendant Wyche, Burgess, Freeman & Parham, P.A., Defendant Whiteside, Smith, Jones & Duncan, and an objection to the settlement filed by certain non-settling Defendants to the extent that any order be issued barring claims for contribution.

## STATEMENT OF FACTS

This case arises out of the issuance on May 30, 1985 of revenue bonds in the original principal amount of $16,000,000 by Spartanburg County, South Carolina.[1] The proceeds of the sale were loaned to Retirement Horizons, Inc. ("RHI"), a South Carolina non-profit corporation, to construct, equip, market, and finance a 240–unit retirement facility intended for persons aged 65 years and above ("Skylyn Hall" or "Project" herein) located near Spartanburg, South Carolina. The bonds were offered and sold through the underwriter Buchanan & Co. ("Buchanan"), pursuant to a Preliminary Official Statement ("POS") and an Official Statement ("OS") prepared primarily by Buchanan and its counsel, Low & Furby (the "Low firm"). The OS included a feasibility study of the Project prepared by an Atlanta accounting firm, May Zima & Co. The Defendant Wyche, Burgess, Freeman & Parham, P.A. (the "Wyche firm") acted as bond counsel in the transaction. The units in the Project were to be marketed by Benan, Inc. ("Benan"), whose principals were Ben Smith and his wife, Ann Smith (the "Smiths"); Benan was also to manage the Project. Settling Defendants J.W. Wakefield and Harold Fleming were, along with defendant Horace Smith (a member of the Whiteside firm, which served as Benan's counsel), alleged directors of Benan and received certain payments in connection with Benan or the Project. Defendants Sizemore and Bandy were directors of RHI and defendant Kotouc and his law firm (Parker & Kotouc) served as RHI's counsel.

On or about November 25, 1986, RHI failed to make certain payments required by its loan agreement. Plaintiff The South Carolina National Bank, as indenture trustee ("SCNB") issued a notice of default to bondholders on February 24, 1987 and on April 6, 1987, SCNB filed a complaint in the South Carolina Court of Common Pleas on behalf of the bondholders to foreclose on the project. After receiving sealed bids and entering into a contract with a purchaser following a bondholder balloting process, in April, 1988, SCNB closed the sale of the Skylyn Hall facility, and in July, 1988 distributed approximately $7,370,000 to bondholders, consisting of the net cash proceeds of the sale as well as most of the undisbursed proceeds of the bond offering held by SCNB in various trust accounts, except for several hundred thousand dollars retained by it to defray certain administrative costs as well as costs of this litigation (pursuant to notice to, and voting ballots received from, the bondholders).

On March 25, 1988, SCNB and two bondholders, Mr. and Mrs. Gordon Billipp of New Hampshire, on behalf of a purported class of approximately 1,765 bondholders of record (and perhaps as many as 2300 current and former bondholders and beneficial owners), filed the original complaint in this action. In the complaint as last amended through the Second Amended Complaint, Plaintiffs allege that the Official Statement and the POS contained numerous omissions of material fact relating to, among other things: (1) the non-existence of (and certain deceptive practices concerning) 60 bona fide reservation agreements and deposits at the time of closing, as required by the underwriter as a precondition to closing; (2) alleged bond issue defaults or problems with other retirement facilities with which a number of the Defendants had previously been involved; (3) the existence of a prior report by Ernst & Whinney ("E & W") that recommended a higher level of pre-sale reservations (50%) than that recommended by the underwrit-

---

1. The bonds were not general obligations of the County; instead, principal and interest were payable from a pledge of revenues and receipts of the Project, and the bonds were secured by a first mortgage lien on the Project to be constructed and on various funds held by the indenture trustee under the indenture of trust.

er; (4) a number alleged flaws in the feasibility study prepared by May Zima and included as an Appendix to the Official Statement (primarily in the nature of assumptions which allegedly had no reasonable basis in fact or which various Defendants allegedly knew were unreasonable); (5) the existence of a prior feasibility study by American Retirement Corp. of Nashville for a project of this type in the same area which concluded that not more than 130 units, of a rental-only nature, were feasible in the relevant market and which also recommended a 50% presale of units to prove the market; (6) the absence of a marketing person (Mary Lancaster) described in the OS as Director of Marketing, and generally the alleged omission of facts about certain Defendants' concerns over the lack of adequate marketing and management expertise for this Project; (7) alleged inadequacy of working capital and of reserve funds; (8) certain alleged kickbacks, transfers of money, and lack of arms' length dealings between Defendants other than the law firms; (9) pending grand jury investigation for federal law fraud against certain affiliated of the developers and certain affiliates; and (10) the lack of provisions for approximately $300,000 of kitchen equipment in the furniture, fixtures and equipment contract. The Complaint seeks recovery against all Defendants under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder, the South Carolina Uniform Securities Act and various principles of common law. In addition, a claim under the Federal Racketeering Influenced and Corrupt Organizations Act ("RICO") is asserted against certain of the Defendants. The Defendants vigorously dispute these allegations and any liability to the Plaintiffs.

Shortly after the initiation of the action, Plaintiffs and Defendants embarked on substantial pre-trial discovery. Discovery included both formal and informal production of documents by all parties to the case, entailing the production and examination of tens of thousands pages of documents by SCNB, the Whiteside firm, the Wyche firm, the Low firm, Buchanan & Co., May Zima, Kotouc and virtually all other parties as well as numerous non-parties. In addition, the parties took between 40 and 50 depositions of various party and non-party fact witnesses during the course of which more than 1400 exhibits were marked.

In December, 1989, subsequent to the completion of depositions of all fact witnesses, Plaintiffs entered into serious settlement discussions with a number of the settling Defendants.[2] Those most-recent, serious discussions, which also involved representatives of insurance carriers of some of the settling Defendants, continued for almost three months. Following earlier notice to the Court of impending settlement, on February 28, 1990 the Plaintiffs, the Wyche firm, the Whiteside firm and Kotouc and his firm filed with the Court their joint memorandum of pro tanto settlement. On March 1, 1990, the Court held an open court hearing on that motion, was advised by the parties of certain other settlements with Defendants Low firm and John Low, Fleming, Sizemore and Bandy that had been reached that day, gave preliminary approval to those settlements, and directed Plaintiffs and all remaining non-settling defendants forthwith to conduct efforts to settle the remaining claims. Thereafter, Plaintiffs and defendants Wakefield, Benan, Ben Smith and Ann Smith reached supplemental agreements incorporating in relevant part the terms of the February 28, 1990 memorandum of settlement. Pursuant to the Court's Orders of April 16, April 25 and April 27, 1990, individual notice was mailed and published notice was given to Class Members informing them of the settlements, of the scheduled settlement hearing, and of their right to opt out of or object to the settlement, as well as related matters stated in the mailed notice.

### TERMS OF THE PROPOSED SETTLEMENT

The memorandum of settlement and supplemental settlement agreements provide

---

**2.** The Court has been advised that settlement demands by Plaintiffs upon numerous defendants were initiated in the Spring of 1989 and that settlement discussions continued from time to time thereafter as the case moved along.

that the Settling Defendants will pay a total of $2,931,387 into an interest bearing escrow fund for the benefit of the Class. The amounts to be contributed by each Settling Defendant are as follows:

| | |
|---|---|
| The Low Firm | $925,000 |
| The Wyche Firm | $925,000 |
| The Whiteside Firm | $625,000 |
| Parker & Kotouc | $150,000 |
| J.W. Wakefield, Jr. | $125,000 |
| Harold Fleming | $100,000 |
| Ben and Ann Smith, Benan | $ 80,000 |
| Tom L. Sizemore | $ 1,287 |
| John J. Bandy, Jr. | $ 100 |

The parties to the settlement have made a condition of effectiveness of the settlement that the Court certify the Class as to claims against the Settling Defendants, only, for purposes of settlement and enter an Order ("Bar Order") barring the assertion of cross-claims by non-settling Defendants arising out of this case. The Bar Order would provide that, if a judgment is entered against non-settling Defendants, those Defendants would be entitled to a credit which shall be determined at the time of trial or judgment based on controlling legal principles in effect at that time. The memorandum of settlement provides for dismissal of all claims which Plaintiffs and the Class Members have brought, or could have brought, against the Settling Defendants, and for specified mutual releases among the Settling Defendants (including any subsequently-settling defendants).

## DISCUSSION

■ The standards to be applied in determining whether to approve settlement of class actions are well established. The voluntary resolution of litigation through settlement is strongly favored by the courts. *Williams v. First National Bank,* 216 U.S. 582, 30 S.Ct. 441, 54 L.Ed. 625 (1910); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir.1974); *Mashburn v. National Healthcare, Inc.,* 684 F.Supp. 660, 667–68 (M.D.Ala.1988). This policy is particularly appropriate than in class actions:

In the class action context in particular, "there is an overriding public interest in favor of settlement" settlement of the complex disputes often involved in class actions minimizes the litigation expenses

of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

*Armstrong v. Board of School Directors,* 616 F.2d 305, 313 (7th Cir.1980) (citations omitted). See also *Weinburger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982) (corrected on other grounds on petition for rehearing) [1982–83 Transfer Binder] F.Sec.L. Rep. (CCH) ¶ 99,074 (2d Cir.), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *Van Bronkhorst v. SAFECO Corp.,* 529 F.2d 943, 950 (9th Cir.1976); *In re Saxon Securities Litigation,* [1985–86 Transfer Binder] F.Sec.L.Rep. (CCH) ¶ 92,414, at 92,525 (S.D.N.Y.1985).

Rule 23(e) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the Court ..." As a general matter, the Court's function in assessing a proposed settlement is to determine whether, as a whole, it is fair, adequate and reasonable to Class Members. See, e.g., *Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir.1983); *Troncelliti v. Minolta Corp.,* 666 F.Supp. 750, 752–53 (D.Md.1987); *In re Mid–Atlantic Toyota Antitrust Litigation,* 605 F.Supp. 440, 441 (D.Md.1984). In making this evaluation, courts generally cite certain primary factors to consider:

1. the fairness of the settlement negotiations and the views and experience of counsel;

2. the relative strength of the parties' cases as well as the uncertainties of litigation on the merits;

3. the complexity, expense and likely duration of the litigation;

4. the adequacy of the settlement amount viewed against the risks and expenses of continued litigation; and

5. the stage of the litigation, including the factual record developed by the parties.

For the reasons set forth herein, the Court is satisfied that the proposed settlement satisfies each of these criteria.

■ A. *The fairness of the settlement negotiations and the views and experience of counsel.* In assessing the fairness

and adequacy of a proposed settlement, "there is a strong initial presumption that the compromise is fair and reasonable." *In re Saxon Securities Litigation, supra,* ¶ 92,414, at 92,525, quoting *Katz v. E.L.I. Computer Systems, Inc.,* [1970–71 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,994, at 90,676 1971 WL 251 (S.D.N.Y.1971). Thus, the courts have recognized that "[s]ettlements, by definition, are compromises which 'need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits.'" *In re Saxon Securities Litigation, supra,* ¶ 92,414, at 92,525 quoting *Alliance to End Repression v. City of Chicago,* 561 F.Supp. 537, 548 (N.D.Ill.1982). As has been stated by the Fourth Circuit:

> The trial court should not ... turn the settlement hearing "into a trial or a rehearsal of the trial 'nor need it' reach any dispositive conclusions on the admittedly unsettled legal issues" in the case. It is not part of its duty in approving a settlement to establish that "as a matter of legal certainty the subjects claim or counter-claim is or is not worthless or valuable."

*Flinn v. F.M.C. Corp.,* 528 F.2d 1169, 1172–73 (4th Cir.1975) (footnotes omitted), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976).

In this context, in evaluating the terms of a proposed settlement, the courts have looked first to the fairness of the settlement negotiations and the views of counsel. The question posed is whether the settlement was achieved through "arm's length negotiations" by counsel who have "the experience and ability ... necessary to effect the representation of the class' interest." *Weinburger,* 698 F.2d at 74. See also, e.g., *Eltman v. Grandma Lee's, Inc.,* [1986–87 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,798, at 93,904 (E.D.N.Y.1986).

In the instant case, counsel for all the settling parties have advised the Court that the settlement discussions were difficult and at times tense, and in fact, that at times talks with various of the Defendants were broken off because both sides refused to budge. Even after the dollar amounts of the various individual settlements were

agreed upon, the Bar Order and wording of mutual releases became significant issues in reaching a final agreement.

The negotiations in this case were conducted by able counsel who have a substantial amount of litigation experience, particularly in this sort of complex securities action. Counsel to both the Plaintiffs and the settling Defendants undertook these negotiations after completion of substantial written, deposition and document discovery, as well as massive briefing on certain key procedural and substantive issues arising out of the case. Accordingly, such counsel entered into settlement negotiations on behalf of their clients after becoming fully informed of all pertinent factual and legal issues in the case. In sum, counsel for the Plaintiff Class left no stone unturned in the case and it is appropriate to give great weight to their judgment that the proposed settlement is in the interest of all their clients.

■ B. *The relative strengths of the parties cases as well as the uncertainties of litigation on the merits.* Although a court is not to decide the merits of the case or to attempt to resolve unsettled legal questions when reviewing the adequacy of a proposed settlement, see *Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 998 n. 14, 67 L.Ed.2d 59 (1981) (citing *Protected Committee for Independent Stockholders v. Anderson,* 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163–64, 20 L.Ed.2d 1 (1968), it is nonetheless necessary in order to evaluate the fairness and adequacy of a settlement to assess the relative strengths and weaknesses of the settling parties' positions. *See Flinn v. F.M.C. Corp., supra,* 528 F.2d at 1172. Of course, when comparing the amount of the settlement with the potential liability of the settling Defendants, it also is appropriate to consider such Defendants' abilities to pay any subsequent judgment and the availability or lack thereof of insurance proceeds. See *Mashburn v. National Healthcare, Inc.,* 684 F.Supp. 660, 670–71 (M.D.Ala.1988). After all, the purpose of settlements is "to avoid the trial of sharply disputed issues and to dispense with waste-

ful litigation." *Jiffy–Lube Securities Litigation*, [1989–90 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 94,859, at 94,661, 1990 WL 39127 (D.Md.1990), quoting *In re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305, 316 (D.Md.1979).

The critical issue to consider in connection with this factor is the distinction between the Defendants and their respective roles in the alleged wrongdoing. For example, a reading of the amended complaint indicates that Defendant Reverend Ben Smith spearheaded a number of aspects of the Project and played a direct role in a number of the problem areas. However, counsel have advised the Court that Reverend Smith is not in good health and Reverend Smith testified at the hearing that he was required to mortgage his house and to liquidate his investments and certain retirement funds to raise the money he is contributing to the settlement. Similarly, the Court was concerned with the small amounts of money contributed to the settlement by Defendants Reverend John Bandy and Tommy Sizemore, but both testified at the hearing that they have little money to contribute. Reverend Bandy is a retired minister living on social security with no investments or real estate. He simply has nothing else to give other than the $100 he has contributed. Similarly, Mr. Sizemore testified that he is insolvent and unable to obtain credit[3], and his contribution to the settlement is a check written to him by the purchaser of a portion of the inventory he owned in his last business. The law firm Defendants have made contributions from insurance coverage, in some cases at or close to policy limits.[4] Defendant Senator Horace Smith, in fact, is making a contribution over and above his insurance policy limits, from his personal resources. The Court is of the opinion that the negotiations were conducted at arms' length, based on full access to the relevant facts, and that the Plaintiffs properly agreed to the settlement amounts. At least some of these law firm Defendants could argue with significant force and support that their legal opinions and actions were correct or reasonable based upon the information that was available to them, and that if they were incorrect or unreasonable, it was because the developers of the project or others misled them as well as the investors.

Apart from the amounts paid in settlement, an evaluation of the relevant pleadings filed with the Court reveals that the strengths of the claims and defenses asserted have been the subject of substantial dispute since the inception of this litigation. The risks to Plaintiffs on the legal and factual issues raised also militate in favor of settlement.

Thus, to prevail on their Rule 10b–5 claims, Plaintiffs must establish, among other things, that Settling Defendants acted with scienter; that Plaintiffs relied on purported misrepresentations (or that the fraud-on-the-market theory is available in lieu of reliance); and that the alleged misstatements and omissions were the proximate cause of the project's failure. Settling Defendants strongly dispute Plaintiffs' ability to show scienter.

As to Plaintiffs' state common law claims, certain of the same elements which must be established to make a Rule 10b–5 claim, including reliance, proximate causation, and (as to fraud claims) intent, must be also established. Defendants assert that, as a legal and factual matter, Plain-

---

**3.** At the March 1, 1990 hearing Mr. Sizemore and Plaintiffs' counsel exhibited Sizemore's tax returns and financial statements and related information to substantiate his claims.

**4.** In the case of the Wyche firm, the primary policy limits were reported to have been exhausted and additional funds were reported to be payable under arrangements that involve reservations of rights. In the case of the Kotouc firm, the Court has been informed that the amount paid may even slightly exceed policy limits, and Mr. Kotouc is now pro se, his defense counsel having withdrawn; Mr. Kotouc

testified as to his lack of resources beyond his remaining coverage. In the case of the Low firm, the Court was informed that only a very small amount of the policy limits was not paid, so as to afford those parties some possibility of defense under the policy for any possible future claims. The parties informed the Court that one serious problem which accelerated settlement discussions was the discovery that certain of the insurance policies contained what the parties termed "erosion" clauses, under which costs of defense operated in some way to reduce available dollars to pay settlements or judgments.

tiffs will be unable to establish any of the necessary elements at trial.

Apart from the substantive merits of the parties' claims and defenses, there is also a significant procedural dispute as to the propriety of class certification (in other than the settlement context) for both Plaintiffs' federal and state claims. These issues have been the subject of substantial briefing by the parties on which the Court has not yet ruled. The uncertainties associated with ultimate certification also militate in favor of approving settlement. *See Eltman v. Grandma Lee's, Inc.*, [1986–87 Transfer Binder] F.Sec.L.Rep. (CCH) ¶ 92,798, at 93,905 (E.D.N.Y.1986).

These examples of the various Defendants' positions and defenses, though indicative of the obstacles and road blocks in the Plaintiffs' path, do not mean that the Court has determined that the Plaintiffs cannot overcome such difficulties and prove their case at trial. The Court need not resolve these issues for purposes of this motion, but notes that the ultimate resolution of the numerous and significant factual and legal issues poses risks to both sides. Based on these factors, the Court is satisfied that the amounts paid into the settlement by each of the Defendants falls within the "range of reasonableness" given the nature of the claims and defenses asserted and the Defendants' ability to pay should the judgment be obtained.

C. *The complexity, expense, and likely duration of the litigation.* "[A]n integral part of the strength of the case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir.1985), citing *Grunin v. International House of Pancakes*, 513 F.2d 114, 124 (8th Cir.1975). Although Plaintiffs in any case may firmly believe that their claims have merit, the complexities and uncertainties characteristic of complex securities litigation, and the concomitant costs that necessarily are entailed, make it appropriate for such Plaintiffs to compromise their claims pursuant to a reasonable settlement. Other courts recognize the fact "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman,*

59 F.R.D. 525, 528 (S.D.N.Y.1973). The uncertainty engendered by the complexity of this case is exacerbated by the number of participants involved in the transactions. Over twenty persons or entities are now Defendants and approximately 50 depositions (including those of various experts) and well over 1,400 exhibits already form the record in this case, much of which will become trial evidence.

The likely duration and associated expenses of continued litigation likewise favor approval of the settlement. See *Warren v. City of Tampa*, 693 F.Supp. 1051, 1059 (M.D.Fla.1988) (finding that duration, complexity and expenditures on continued litigation of claims supports approval of a proposed settlement), *aff'd*, 893 F.2d 347 (11th Cir.1989). In addition to the thousands of hours worked by counsel since the case was filed, substantial additional work can be expected if this case goes to trial against all these Defendants. Although Plaintiffs will continue to pursue their claims against the non-settling Defendants, many additional hours would have been required to complete discovery, to prepare and respond to anticipated summary judgment motions, and to try the case against the settling Defendants. Settlement under these circumstances clearly is appropriate.

D. *The adequacy of the settlement amount viewed against the risks and expenses of continued litigation.* As discussed, the Court is of the opinion that the consideration obtained by the Plaintiffs under this settlement is adequate and is wholly within the "range of reasonableness" given the circumstances surrounding this case. The original bond offering was in the amount of $16,000,000. Plaintiffs previously have received distributions of approximately $7.3 million from the indenture trustee. The settlements will provide an additional amount of almost $3,000,000 plus some potential amount of interest, from the settling Defendants. While Plaintiffs obviously seek recovery of the total amount of unpaid bond principal and interest from all Defendants, plus attorneys' fees and costs, the compromise reached with respect to these settling Defendants is well

within reason. The total amount recovered to date from all sources on behalf of the bondholders is approximately 63% of the principal amount of the bond issue. This is a partial settlement; there still remain a number of Defendants in the case, who either through settlement or a Plaintiffs' judgment at trial, may be required to provide further contributions to the bondholders.[5]

Many courts have held that a settlement can be approved even where the benefits amount to a small percentage of recovery sought. See, e.g., *City of Detroit v. Grinnell Corp.*, 495 F.2d at 455 (finding that there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery); *Zerkle v. Cleveland–Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y.1971) (in shareholder litigation, "the courts have displayed a healthy skepticism in the face of optimistic forecast or large demands").

Given the fact that over 60% of the principal amount of the bond issue, if the settlement is approved, will have been returned to the bond purchasers, and the fact that there still remain in the case a number of Defendants who may potentially be required to pay further sums to the bond purchasers, and the defenses and attendant litigation risk inherent in going forward against the settling Defendants, it is quite clear that this settlement ought to be approved.

E. *The stage of the proceedings, including the factual record developed by the parties.* A final factor to be considered in approving the proposed class settlement is the extent of pre-trial discovery and the state of the factual record:

> In reviewing the record and evaluating the strength of the case, the trial court should consider the extent of discovery that has taken place ... The fact that all discovery has been completed and the case is ready for trial is important, since it ordinarily assures sufficient development of the facts to permit a reasonable judgment on the possible merits of the case.

*Flinn v. F.M.C. Corp.*, 528 F.2d 1169, 1173 (4th Cir.1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976).

Plaintiffs and their counsel in this case took or participated in approximately 50 depositions with over 1400 exhibits marked, and reviewed well over 30 boxes of documents in addition to substantial other informal discovery. Armed with that information, Plaintiffs' counsel took their best bargaining position available to their negotiations. Based on this extensive litigation and discovery, counsels' recommendation of the settlement is well supported in the record.

## VIEWS OF THE PUTATIVE CLASS MEMBERS

Apart from the foregoing factors, one other issue also supports approval of the proposed settlement.

## ADEQUACY OF NOTICE

Rule 23(e), Fed.R.Civ.P., provides that notice of the proposed dismissal or compromise be given to all members of the Class in such manner as the Court directs. Rule 23(c)(2) provides for notice advising class members of the right to opt out and certain other related matters, including the binding effect of class judgments and the right to make individual appearances. Pursuant to those provisions and as the result of the preliminary hearing held March 1, 1990, this Court entered orders prescribing and approving the form of notice and directing the method of its mailing and publication. Subsequently, the Plaintiffs have filed affidavits of counsel and of a corporate trust officer of Plaintiff The South Carolina National Bank, as Trustee, regarding the method of mailing and publishing the notice.

The Court finds that the Mailed Notice was properly mailed in accordance with the Court's orders and that the Publication Notice was duly published in *The Wall Street*

---

5. The Court has been advised that settlement discussions with certain other defendants are ongoing, and that a settlement with defendants J.R. Randall and Heritage Living Centers has recently been agreed to by counsel for those defendants and for Plaintiffs.

*Journal* in accordance with such orders. The Court finds that the Mailed Notice and the Publication Notice constituted the best notice practicable under the circumstances and adequately fulfilled all legal requirements.

As stated by the Fourth Circuit, "[t]he attitude of members of the Class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court...." *Flinn v. FMC Corp.*, 528 F.2d at 1173. See also *In re Mid–Atlantic Toyota Antitrust Litigation*, 605 F.Supp. at 445 ("The almost complete absence of opposition to the settlements also supports a finding of adequacy in this case.")

In this case, approximately 2300 copies of the detailed notice of pendency of class action and proposed settlement were mailed to Class Members identified to the Court by the indenture Trustee. In addition, a summary notice was published on page B–7 in the nationwide issue of the *Wall Street Journal* on May 7, 1990. The class notice describes a procedure by which Class Members may object to the settlement in any of its conditions or terms and no Class Members appeared at the June 12th hearing to raise objections to the settlement. The deadline for filing a written objection to the settlement was May 25, 1990. It is quite significant that no Class Member filed by May 25, 1990, or has ever filed, a written objection to the settlement or any of its terms. Moreover, as of the date of the hearing, only 21 Class Members had requested exclusion from the Class.[6]

Further, with the permission of the Magistrate, Plaintiffs' counsel attempted to contact the persons who had requested exclusion and were able to contact prior to the hearing all but five of the persons who had filed the forms which requested exclusion from the Class. In each case, the person who had filed a request for exclusion from the Class had either done so mistakenly or had not realized a loss on their particular transactions in the Skylyn Hall bonds and accordingly did not wish to be bound by any judgment since they would obtain no recovery. The lack of either objections or significant opt-outs adds further support to these settlements.

## PROVISIONAL CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES

▮ As a condition of the proposed settlement, the Settling Defendants have provided that the Court enter an Order certifying the Class solely for settlement purposes. While the Court has not yet issued a final ruling on Plaintiffs' pending motion for class certification, it is clear that the Court may provisionally certify the Class for settlement purposes. As the Fifth Circuit has noted:

A blanket rule prohibiting the use of temporary settlement classes may render it virtually impossible for the parties to compromise class issues and reach a proposed class settlement before a class certification. Such as firm restriction does not appear necessary or desirable. The hallmark of Rule 23 is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the effected parties and to promote judicial efficiencies.

\* \* \* \* \* \*

Temporary settlement classes have proved to be quite useful in resolving major class action disputes. While their use may still be controversial, most courts have recognized their utility and have authorized the parties to seek to compromise their differences including class action issues, through this means.

*In re Beef Industry AntiTrust Litigation*, 607 F.2d 167, 177–78 (5th Cir.1979) (quoting III *Newburg on Class Actions*, § 5570c, at 246), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981); *Mashburn v. National Healthcare, Inc.*, 684 F.Supp. 660, 665 n. 4 (M.D.Ala.1988).

On the record before it, the Court finds that, for purposes of the proposed settlement, class certification is appropriate. The Plaintiffs' claims against the Settling

---

6. A form of Exclusion Request had been included in the package mailed to putative class members, along with the lengthy Notice and the form of Memorandum of Settlement and a court-approved form of Verified Proof of Claim.

Defendants are entitled to, and will, be certified as class claims under Rules 23(b)(1) and 23(b)(3).

### BAR ORDER

Because the proposed settlement does not include certain Defendants, the Settling Defendants have imposed as a requirement of the settlement that the Court enter an Order barring cross-claims against the settling Defendants. Understandably, the Settling Defendants have no desire to pay money to the Plaintiffs to settle their claims only to be brought back into the case to defend themselves on contribution or other cross-claims asserted by the non-settling Defendants.

#### *Contribution Bar Order Under Federal Law*

The Settling Defendants have demanded as a condition to the settlement that an Order be entered barring any and all claims against them by the non-settling Defendants. The settling parties urge, as the *Nucorp* court noted that if such a contribution bar order is not entered,

> then partial settlement of any federal securities question before trial is, as a practical matter, impossible. Any single Defendant who refuses to settle, for whatever reason, forces all others to trial. Anyone foolish enough to settle without barring contribution is courting disaster. They are allowing the total damages from which their ultimate share will be derived to be determined in a trial where they are not even represented.

*In re Nucorp Energy Securities Litigation,* 661 F.Supp. 1403, 1408 (S.D.Cal.1987), cited with approval in *Franklin v. Kapro Corp.,* 884 F.2d 1222, 1229 (9th Cir.1989).

Defendants C. Donald Stone, and Unico Development Corp. (the "Stone Group Defendants") have objected to the entry of a contribution bar order on two grounds: (1) that such a contribution bar order would bar their Seventh Amendment right to a jury trial determining their proportionate share of any liability to the Plaintiffs, and (2) said Defendants argue that some of the claims which they wish to assert are not claims for contribution or indemnification, but are independent causes of action. Non-

settling Defendant May Zima & Co. and its former partners and accountants who are defendants ("May Zima") have not objected to the settlement and have advised the Court that they would not object to a contribution bar order, provided that such an order limits the non-settling Defendants' liabilities pursuant to a "proportional" rule whereby the non-settling Defendants at trial are required to pay only their share of damages to the Plaintiffs as determined by a method similar to comparable fault.

■ A. *Overview of indemnification and contribution in securities law actions.* Indemnification and contributions are separate concepts and have been summarized as follows:

> [contribution and indemnification] should be carefully distinguished. Contribution involves distributing losses among tortfeasors by requiring each to pay his proportionate share. Indemnity entails shifting the entire loss from one tort feasor who has been compelled to pay it to another who, for equitable reasons should bear it instead. In essence, contribution results in a sharing of the burden, whereas indemnity results in shifting it.

Ruder, *Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, in Pari Delicto, Indemnification and Contribution,* 120 U.Pa.L.Rev. 597, 647 (1972).

It is well settled that as a matter of public policy one tortfeasor may not seek indemnification from another under Rule 10b–5. As stated by the Fifth Circuit:

> [I]t may be noted that indemnification tends to frustrate the policy of securities legislation. "A securities wrongdoer should not be permitted to escape loss by shifting his entire responsibility to another party." The 1933 and 1934 Securities Acts "do not provide anywhere for indemnification under any circumstances."

*Stowell v. Ted S. Finkel Investment Services,* 641 F.2d 323, 325 (5th Cir.1981), quoting *Heizer Corp. v. Ross,* 601 F.2d 330, 334–35 (7th Cir.1979). See also, e.g., *In re Atlantic Financial Management, Inc. Securities Litigation,* 718 F.Supp. 1012, 1015

(D.Mass.1988); *In re Olympia Brewing Co. Securities Litigation*, 674 F.Supp. 597, 612–13 (N.D.Ill.1987); *Goldberg v. Touche Ross & Co.*, 531 F.Supp. 86, 88 (S.D.N.Y. 1982); *Eacho v. N.D. Resources, Inc.*, [1984–85 Transfer Binder] CCH Fed.Sec.L. Rep. (CCH) ¶ 92,067, at 91,329, 1985 WL 1717 (D.D.C.1985).

Similarly, there is no right to indemnification at common law:

> Indemnity is similarly unavailable to the third-party plaintiffs on the common law claims. Indemnity is an equitable remedy that assigns responsibility to the true wrongdoer, that is, where the third-party plaintiff is liable to the plaintiff in the main action only vicariously. Evidence that the third-party plaintiff itself is at fault would bar indemnification. The [plaintiffs] here charge the broker-dealers with fraud, breach of contract, and breach of fiduciary duty independently of any purported misconduct on the part of the third-party defendants. Therefore, indemnity would be inappropriate.

*In re Baldwin–United Corp. Securities Litigation*, [1986–87 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 92,951, at 94,651, 1986 WL 358 (S.D.N.Y.1986). See also, e.g., *Stratton Group, Ltd. v. Sprayregen*, 466 F.Supp. 1180, 1185 n. 4 (S.D.N.Y.1979). Accordingly, the Stone Group Defendants, and for that matter all the remaining nonsettling Defendants, have no viable claim for indemnification in this case.

The question of whether claims for contribution might be available to the non-settling Defendants in this case is more complex, at least as to the Rule 10b–5 claims. Because a right of action under section 10(b) of the Securities Act of 1934 and Rule 10b–5 promulgated thereunder is implied rather than written expressly into the statute, there is no express statutory right of contribution. While the majority of federal courts have found an implied right to contribution under Rule 10b–5, *see* 5C A. Jacobs, *Litigation and Practice Under Rule*

*10b–5*, § 264.02[c] at 11,441 and cases cited therein, other courts have reached a contrary conclusion. See *First Fin. Savings Bank v. American Ins. Co. of Florida*, [1989–90 Transfer Binder] Fed.Sec.L.Rep. ¶ 94,824 at 1, 1989 WL 168015 (E.D.N.C. 1989); *In re Professional Fin. Mgmt., Ltd.*, 683 F.Supp. 1283 (D.Minn.1988). Cf. *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101 (4th Cir.1989) (Contributions not available under § 12(2) of the Securities Act of 1933). This Court does not need to decide that issue today, based upon the terms of the settlements approved hereby and the Court's rulings hereafter.

The same is not true, however, as to the state common law claims. South Carolina common law provides that there is no right of contribution among tortfeasors. *Knight v. Autumn Co.*, 271 S.C. 112, 245 S.E.2d 602, 603–04 (1978); *M & T Chemicals, Inc. v. Barker Industries, Inc.*, 296 S.C. 103, 370 S.E.2d 886, 887 (Ct.App.1988); *Horton v. U.S.*, 622 F.2d 80 (4th Cir.1980). Also, South Carolina in 1988 adopted the Uniform Contribution Among Tortfeasors Act. South Carolina Code §§ 15–38–10, *et seq.*[7] The Act created a right of contribution and provided that a Settling Defendant is insulated from later contribution claims by co-tortfeasors if he obtains a good faith release or covenant not to sue from the Plaintiff. South Carolina Code § 15–38–10. Thus, under either the common law rule, or the more recent provisions of the contribution among joint tortfeasors act, the Stone Group Defendants' state law contribution claims are unavailable.

■ B. *The propriety of a bar order in this case.* Federal courts have long recognized a strong public policy supporting settlement of class actions. *Franklin v. Kapro Corp.*, 884 F.2d 1222, 1229 (9th Cir.1989). Accordingly, federal courts have virtually without exception approved orders barring claims by non-settling Defendants against settling Defendants in

---

7. The effective date of that Act is later than the filing date of this action. Another judge of this District has construed the effective date provisions to preclude retroactive applicability of that Act in situations (as in this case) where the alleged liability-creating events occurred prior to the enactment but where the judgment against the Defendants in favor of the Plaintiffs (for which Defendants would then seek contribution) occurred after the enactment date. *See Lightner v. Duke Power*, 719 F.Supp. 1310 (D.S. C.1989) (Henderson, J.).

connection with both federal and state securities law claims. See, e.g., *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1226–27 (9th Cir.1989); *In re Washington Public Power Supply Sec. Litig.*, 720 F.Supp. 1379, 1399 (D.Ariz.1989); *In re Washington Public Power Supply Sec. Litig.*, [1988 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,326, 1988 WL 158947 (W.D.Wash.1988); *Langford v. Fox*, 1988 WL 70351 (S.D.N.Y.1988) (LEXIS 10650); *In re Sunrise Sec. Litig.*, 698 F.Supp. 1256, 1257 (E.D.Pa.1988); *In re Atlantic Fin. Mgmt. Sec. Litig.*, 718 F.Supp. 1012, 1015 (D.Mass.1988); *Kirkorian v. Borelli*, 695 F.Supp. 446, 452–54 (N.D.Cal.1988); *First Federal Savings & Loan v. Oppenheim, Appel, Dixon & Co.*, 631 F.Supp. 1029, 1036 (S.D.N.Y.1986); *In re Nucorp Sec. Litig.*, 661 F.Supp. 1403, 1408 (S.D.Cal.1987); *Nelson v. Bennett*, 662 F.Supp. 1324, 1334–39 (E.D.Cal.1987); *In re United Energy Sec. Litig.*, [1989 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,376, at 92,463–64, 1989 WL 73211 (C.D. Cal.1989); *Corrugated Container Antitrust Litig.*, 84 F.R.D. 40, 41–42 (S.D.Tex. 1979); *Employers Ins. of Wausau v. Musick, Peeler & Garrett*, [Current Binder] CCH Fed.Sec.L.Rep. ¶ 95,208, 1990 WL 74371 (S.D.Cal.1990); *accord, Alvarado Partners LP v. Mehta*, 723 F.Supp. 540 [1989–1990 Transfer Binder] CCH Fed.Sec. L.Rep. ¶ 94,737 (D.Colo.1989); *In re Terra–Drill Partnership Securities Litigation*, 726 F.Supp. 655 (S.D.Tex.1989). In this context, courts recognized the propriety of orders barring non-settling Defendants' claims as a means of encouraging settlements involving fewer than all Defendants:

> Allowing contribution rights to be extinguished prior to trial will encourage settlement since a defendant may be confident that his pre-trial settlement has conclusively terminated his involvement in the litigation.

*In re Nucorp Securities Litigation*, 661 F.Supp. 1403, 1408 (S.D.Cal.1987). As stated by another district court:

> The reason to adopt settlement bar rules is that they further both strong federal policies of encouraging settlement, by insulating the settling defendant from further indeterminate liability, and the

spreading liability for violations of securities law among violators.

*In re Atlantic Financial Management Securities Litigation*, 718 F.Supp. 1012, 1016 (D.Mass.1988), citing *Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir.1985). This Court agrees with the vast majority of other federal courts that have addressed the issue and agrees that it is within its discretion to impose an Order barring cross-claims against the settling Defendants by the non-settling Defendants.

C. *Objections of the non-settling Defendants.* Between them, the Stone Defendants and May Zima have raised three objections to the proposed Order barring contributions: (1) that a contribution bar would violate the Seventh Amendment right of the non-settling Defendants to have their proportionate share of any liability to the Plaintiffs determined by a jury; (2) that an Order barring cross-claims cannot bar independent causes of action; and (3) an objection to the contribution bar order that determines the extent of the non-settling Defendants' liabilities by any method other than a proportionate share determined on a compared default basis.

1. *The appropriate method of determining the extent of liabilities remaining by the non-settling Defendants after the settlement.* May Zima & Co. has advised the Court that it has no objection to entry of a contribution bar order so long as the order includes the so called proportionate rule. While federal courts have consistently supported bar orders in the context of partial settlements, the courts are divided on the amount of credit or reduction or offset to be given to the non-settling Defendants when damages are assessed at trial. Some courts, adopting what has been termed the "pro tanto" rule, require any judgment against the non-settling Defendant be reduced dollar for dollar by the amount paid in settlement. See, e.g., *In re Atlantic Financial Management, Inc. Securities Litigation*, 718 F.Supp. 1012, 1016 (D.Mass.1988); *First Federal Savings & Loan v. Oppenheim, Appel, Dixon & Co.*, 631 F.Supp. 1029, 1035–36 (S.D.N.Y.1986). Another possible method, discussed especially in earlier cases, is the "pro rata"

rule, where liability is divided into equal "slices of the pie" represented by the aggregate judgment amount, one slice being allocated to each defendant (or group of related defendants). Other courts have adopted the "proportionate" rule urged here by May Zima & Co. and require the trier of fact to determine a total amount of damages owed to the Plaintiffs by all culpable parties and then to allocate relative culpability to all Defendants, including both those who did and did not settle the case. See, e.g., *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229–32 (9th Cir. 1989); *In re Sunrise Securities Litigation*, 698 F.Supp. 1256, 1261 (E.D.Pa.1988). Neither the Fourth Circuit nor this Court has addressed these issues (and if the Fourth Circuit or this Court were ultimately to hold that there is no right of contribution available here, these issues would not need to be addressed).

In recognition of the fact that the type of bar order appropriate to the settlement is an open question, the settling parties have provided that

> The amount of any judgment obtained by Plaintiffs against non-settling defendants shall be reduced by the amount, if any, for which the settling defendants would, in the absence of this bar order, be liable to the non-settling defendants by way of claims for contributions, indemnity, or otherwise, whether in this action or other actions relating to the bonds.

Memorandum of Settlement, Paragraph (V). The settlement further provides that the amount of the offset is to be determined "in accordance with principles of law and equity and procedure" applicable at the time the offset is determined; it does not purport to dictate the amount of credit or offset to which the non-settling Defendants might be entitled or which the Court must order.[8] Thus, the proposed bar order leaves open the judgment reduction or set-

tlement-credit-amount issue to assure that non-settling Defendants obtain appropriate credit when, if ever, the issuer requires resolution.[9]

The relevant provisions of the foregoing paragraphs specify that any non-settling Defendant shall be entitled to a reduction in any judgment against it by the amount for which Settling Defendants would otherwise be liable to the non-settling Defendants. The judgment reduction mechanism is designed to insure that non-settling Defendants would pay no more than they would have "in the absence of the bar order," i.e., if non-settling Defendants had been free to pursue whatever claims they may have against the settling Defendants. Thus, the clear intent of the bar order is that non-settling Defendants' ultimate liability will not be greater than it would be absent the bar order.

■ The Court is of the opinion that it is not necessary at this stage of the proceedings to determine whether to adopt a "pro rata" or a proportionate rule by which to determine how much reduction in judgment should be given to the non-settling Defendants if the Plaintiffs should obtain a verdict against them. The Court's order will adopt the language of the memorandum of settlement which defers consideration of that particular issue. The Court finds that it may enter the Bar Order requested, as a final judgment of the issues concluded thereby, under Rule 54(b), while still reserving for determination at the time of trial such other issues as the method and amount of credit to be afforded non-settling defendants in respect of these settlements and the releases of these alleged joint tortfeasors.

2. *Independent rights of action v. claims for contribution.* The Stone Defendants seek to assert cross-claims

---

**8.** Thus this case is to be distinguished from *Alvarado Partners*, cited *supra*, where the district court, although approving the principle of a uniform national federal bar order rule, had been presented with a settlement mandating by its terms a pro tanto approach, with which the court disagreed after an analysis. The court there implied that if the parties went back and rewrote the agreement (which it could not re-

write for them, see *Manual For Complex Litigation (Second)*, § 23.14, text at notes 15–16) to adopt a "proportional" rule, the court would be able to approve the settlement and bar order.

**9.** In the event all the remaining non-settling Defendants reach settlements with Plaintiffs, the issue would not require a decision by this Court.

against certain of the Settling Defendants for breach of contract, negligence, and fraud. The Stone Defendants contend that these claims are in the nature of independent rights of action rather than contribution and that such independent causes of action cannot be barred. The Stone Defendants also assert that, as to these claims, they are entitled to a jury trial.

Citing *Greene v. Emersons, Ltd.*, [1983–84 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,582, at 97,271, 1983 WL 1395 (S.D.N.Y. 1983), the Settling Defendants persuasively argue that a rose by any other name is still a rose and that regardless of the title given to the claims the Stone Defendants seek to assert, the Stone Defendants' alleged damages arise only if the Stone Defendants were found liable to the Plaintiffs, and that, accordingly these purported causes of action are nothing more than claims for contribution or indemnification with a slight change in wording.

■ As to the argument that the Stone Defendants are entitled to a jury trial on their cross-claims are construed as claims for indemnification or contribution, there can be no jury trial right. Claims for contribution are equitable in nature and therefore not triable to a jury. "Contribution is a remedy that developed in equity, and there is a considerable body of case law dealing with the equity rules governing it." Restatement (Second) of Torts § 886A, c (1979). *See also Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 769 (3d Cir.1985); *Nelson v. Bennett*, 662 F.Supp. 1324, 1327 (E.D.Cal.1987). Common law courts did not recognize a right of contribution among joint tortfeasors. *Horton v. U.S.*, 622 F.2d 80 (4th Cir.1980); *Zapico v. Bucyrus–Erie Co.*, 579 F.2d 714, 718 (2d Cir.1978), and there is no "federal common law" right to contribution. *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 96–97, 101 S.Ct. 1571, 1583–84, 67 L.Ed.2d 750 (1981). As an equitable remedy, claims for contribution entail no right to a jury trial. *See Jones v. Shramm*, 436 F.2d 899, 901 (D.C.Cir.1970). Moreover, as the Court has previously noted, claims for indemnification as between co-tortfeasors are not cognizable under Rule 10b–5 or common

law; the issue of a right to jury trial or such claims is therefore irrelevant.

As a final matter, even if the Court determines that the Stone Defendants are entitled to jury trial on their cross-claims, the proposed bar order does not abrogate that right. Thus, the bar order provides that the amount of this reduction be determined by the Court "in accordance with principles of law, and equity and procedures then applicable." The settlement memorandum does not specify that the amount of the reduction is determinable solely by the Court, as opposed to a jury. The proposed bar order itself, directing the Court to applicable principles of law, equity and procedures, does not foreclose the use of a jury if the Court determines that cross-claims are properly triable to a jury.

### REIMBURSEMENT OF ATTORNEY FEES AND COSTS OF LITIGATION

■ The Mailed Notice advised Class Members as follows:

"Class Counsel for the plaintiff Class listed herein have advised the Court and the Settling Defendants that they have to date been compensated on an hourly basis and have been reimbursed litigation expenses out of (i) funds set aside by SCNB in 1988 pursuant to requisite majority approvals of bondholders, which have recently been exhausted, and (ii) additional funds advanced by SCNB. The Plaintiffs expect to file a joint application for reimbursement out of the Settlement Fund, before division into Funds A and B, of their out-of-pocket litigation expenses actually incurred to the date of the Final Hearing that have not been defrayed out of said 1988 set-aside funds, and for restoration to the litigation account that was set up in 1988 in the hands of SCNB a sum of $200,000 to defray costs and fees anticipated to be incurred hereafter in this action in preparation for trial against the non-settling defendants. The Plaintiffs may also apply to the Court for an order approving those fees and disbursements which have already been paid out of said 1988 set-

aside funds or otherwise advanced, and have advised the Court that Class Counsel will not separately apply for any contingency fees payable out of the Settlement Fund since they have previously agreed that they will be compensated on an hourly basis."

No putative class member filed any objection to the above quoted proposal nor appeared at the June 12th hearing and voiced any objection.

Pursuant to the above notice, Plaintiffs and their counsel did file with the Court in advance of the hearing their motion for approval of fees and expenses and for setting aside of such further fund to defray litigation expenses and fees, supported by the detailed billings (including detailed time and services listings) of Plaintiffs' counsel and an accounting of fees and expenses.

Defendants C.D. Stone and others represented by his counsel lodged an objection to such application based upon a stated concern that the class members should not be paying for SCNB's cost of defending against Stone's and other defendants' counterclaims for alleged breaches or wrongs of SCNB. While the Court questions whether such defendants themselves have standing to object to such matters, this Court is the guardian of the rights of absent class members and the Court accordingly made inquiry of Plaintiffs' counsel and of counsel for SCNB on that subject of paying for costs of defending counterclaims.

At the June 12, 1990 hearing the Court was advised by counsel, that all duties as to researching, moving to dismiss, answering, and otherwise defending against the counterclaims of Stone and other defendants had been entrusted to and conducted by Mr. William Pope and that Mr. Pope was retained by and separately paid by The South Carolina National Bank in its corporate or commercial capacity and not by the bond issue trust funds or by the corporate trust section of SCNB administering this bond issue, and that none of his fees were chargeable against bondholder funds, and that no reimbursement for his fees was being sought. Based upon such representations the Court determined that the application was not objectionable on the grounds asserted. While there was theoretically some overlap in services where Mr. Pope had attended some depositions and hearings (sometimes while Plaintiffs' counsel was also in attendance), or that Mr. Pope may have participated in ministerial acts relating to transmittal of documents or pleadings, such participation (which was not shown to be extensive) is a natural outgrowth of the situation engendered by the defendants' pleadings and was not such as to abuse any rights of class members, and accordingly the Court sees no need to require any allocation of costs on that account.

In connection with the class certification motions filed by Plaintiffs in April, 1989 and the Plaintiffs' responses filed in June, 1988 to certain defense motions, affidavits were filed with the Court listing the resumes, education, training, experience and expertise in the areas of bond law practice, securities law, and class action practice, on the part of Plaintiffs' counsel. Additionally, this Court has before it a record spanning more than two years of self-evident hard, competent work by Plaintiffs' counsel in the face of skilled and resourceful opposition of more than a dozen highly regarded firms of defense counsel. The Court is satisfied from the record that Plaintiffs' counsel have demonstrated the requisite skill, expertise and diligence to support the Plaintiffs' application for fees and expense reimbursements.

The Court was advised at the hearing that at the outset of the litigation, Plaintiffs' counsel offered to handle the case either on a contingency fee basis or on an hourly basis and that the Plaintiffs, on behalf of the class, determined that it would likely be more cost-advantageous to the class, in the event of a seven-figure recovery or more, to pay counsel on an hourly basis than on a contingency percentage basis. Thereupon, Plaintiffs' counsel agreed to handle the case on an hourly basis, as is reflected in the fee and reimbursement application papers filed with this court. The Court is also advised that deposition exhibits identified in this case include copies of the indenture trustee's notices to bondholders back in 1988 which,

among other things, advised the bondholders of the fee arrangement with counsel and of the setting aside of a litigation fund from trusteed funds held for the benefit of bondholders, and that the records of the trustee produced for inspection by defendants include the originals of the bondholders' ballots by which they authorized, by a substantial majority, the setting aside of such litigation funds by the trustee.

There is no issue here that Plaintiffs' counsel are not entitled to a fee nor that such fees may not be borne, or reimbursed, out of a common fund created by the attorneys' efforts, which in this instance approaches $3 million in size.

The Court determines that the Plaintiffs' application for reimbursement of fees and expenses, and for setting aside of the requested $200,000 fund, is fair, reasonable and adequate and should be approved.

## FINAL JUDGMENT AND ORDER

This matter having come on for hearing before this Court on June 12, 1990 on the matters set forth in the Mailed Notice, the Publication Notice, the accompanying Memorandum Opinion, and the orders and judgments set forth below, and the Court having examined the record and having been duly advised, it is, for the reasons stated in the Memorandum Opinion filed contemporaneously herewith, hereby FOUND, ORDERED, ADJUDGED AND DECREED as follows:

1. The several pro tanto Settlement Stipulations and agreements filed with this Court between Plaintiffs, on behalf of themselves and all class members, and the settling defendants listed hereafter, are hereby found to be fair, reasonable, and adequate and are hereby APPROVED, as relating to settling defendants Wyche, Burgess, Freeman & Parham, P.A. and Eric B. Amstutz, Parker & Kotouc and Thomas O. Kotouc, Whiteside, Smith, Jones & Duncan and Horace C. Smith, John T.C. Low, Tommy E. Furby, and Low & Furby, Harold Fleming, M.D., J.W. Wakefield, C. Benjamin Smith and Ann Smith and Benan, Inc., Tom Sizemore, and John J. Bandy, Sr. (hereafter, together with their respective partners, principals, members, stockholders, employees, agents, heirs, executors, successors and assigns, collectively referred to as the "Settling Defendants").

2. The notice of the pendency of this action and of the settlement of this action pursuant to the terms of the above mentioned Settlement Stipulations heretofore given by mail and by publication to members of the class is hereby found to be the best notice practicable under the circumstances, and is hereby found to meet all the requirements of due process and of Rule 23, Fed.R.Civ.P.

3. (a) *Plaintiffs' Release of Settling Defendants.* Without any further action by anyone, each of the Plaintiffs and each member of the Plaintiff Class defined in this Final Judgment shall be deemed to have released each of the Settling Defendants as above defined, and each of such Settling Defendant's insurers and attorneys, of and from all complaints and claims of such Plaintiffs and members of the Plaintiff class, known or unknown, arising out of any issuance, purchase or sale of the Skylyn Hall bonds which are the subject of this case (the "Bonds") or arising out of or related to any of the matters or transactions alleged in, or which could have been raised in, this action, or arising out of or related to the conduct of this action or its settlement or arising under any factual setting or theory of law relating to the Bonds, whether it be pursuant to securities law, trust law, contract law or tort law, or otherwise, that either have been or might have been or are now asserted or could have been asserted in this action, or that relate to or arise out of the actions and events alleged in the Complaint on file in this case.

(b) *Settling Defendants' Release of Plaintiffs and Members of the Class.* Without any further action by anyone, each of the Settling Defendants, as defined herein, shall be deemed to have released each Plaintiff and each member of the Plaintiff class, and their respective officers, directors, partners, employees and attorneys, past and present, from all counterclaims (permissive or compulsory), known or unknown, arising out of any issuance, purchase or sale of the Skylyn Hall bonds which are the subject of this case or arising

out of or related to any of the matters or transactions alleged in, or which could have been raised in, this action, or arising out of or related to the conduct of this action or its settlement.

(c) *Settling Defendants' Release of Defendants.* Without any further action by anyone, each of the Settling Defendants, as defined herein, shall be deemed to have released each other Settling Defendant, as defined herein, and all attorneys for and insurers of any Settling Defendant, and (in consideration of the provisions of the Settlement Stipulations therefor and of the Bar Order contained in this Final Judgment), each other Defendant herein and their respective officers, directors, partners, employees and attorneys, past and present, from all claims, cross-claims, third party claims, counterclaims (permissive or compulsory), known or unknown, arising out of any issuance, purchase or sale of the Skylyn Hall bonds which are the subject of this case or arising out of or related to any of the matters or transactions alleged in, or which could have been raised in, this action, or arising out of or related to the conduct of this action or its settlement, including without limitation claims for contribution or indemnity or any form of recoupment, reimbursement, liability or recovery under any provision of federal or state law in respect of any judgment, settlement or recovery or in respect of any fees and expenses incurred by any defendant(s), for claims asserted or which may in the future be asserted in this action or in any other action relating to the Bonds. (The Settling Defendants may agree among themselves as to further assurances and/or documentation with regard to the aforesaid mutual release, as between and among said defendants, but the Plaintiffs and class members shall have no responsibility to see to the effectuation of any mutual releases, nor shall the failure of any such delivery of releases be a condition to effectuation of the settlement or the finality of this order and judgment.)

(d) *Release is Pro Tanto.* Nothing herein shall be construed as a dismissal of, adjudication of, or release of any claims of Plaintiffs and Class Members against any persons not among the Settling Defen-

dants, as defined above, or of any claims of any defendant who is not a Settling Defendant, except as may be enjoined and concluded by the Bar Order provisions of this Final Judgment.

(e) *Dismissal with Prejudice and Bar as to suing on released claims.* All claims which are released by this Final Judgment as set forth in this paragraph 3 above, and all claims barred by the provisions of the Bar Order contained in paragraph 6 below, are hereby DISMISSED with prejudice to refiling, and all parties to this action and all members of the plaintiff class are hereby barred and enjoined from instituting and maintaining in this and any other jurisdiction any action based on the claims dismissed and released herein.

4. Pursuant to Rule 23(c)(3) of the Federal Rules of Civil Procedure, this Court finds and determines that the members of the Plaintiff Class who are bound by this Final Judgment are:

(i) all persons (including entities) who purchased, or entered into and performed their part of a contract to purchase, any of the Bonds at any time from the date of the Preliminary Official Statement (April 15, 1985) up to the date of SCNB's January 12, 1988 Notice as Trustee of the results of the foreclosure sale of the Project and other matters (said time span from April 15, 1985 through January 12, 1988 being defined as the Class Period), and who still hold such Bonds or any of such Bonds; (ii) all persons (including entities) who purchased any of the Bonds during the Class Period and who have resold at a loss any of the same prior to the date of final judgment in this action; (iii) all persons (including entities) who are now holders of the Bonds but who did not purchase during the Class Period; and (iv) all persons who are, at any time up to entry of final judgment herein, successors in interest to persons described in (i), (ii) and (iii) above and thus now the holders of such prior holders' Bonds, including transferees by operation of law or by inheritance, bequest, transfer in trust or gift. Claims are deemed made under Rule 23(b)(1) with respect to all persons who are in catego-

ries (i) and (iii) above and those persons in category (iv) who are successors in interest to persons in categories (i) and (ii). Claims are deemed asserted under Rule 23(b)(3) with respect to all persons who are in categories (i) and (ii) above and those persons in category (iv) who are successors in interest to persons in categories (i) and (ii). *Excluded from* the Class are (a) all Defendants (including all Settling Defendants as defined herein) and all persons who aided and abetted any Defendant with notice or knowledge of such Defendant's wrongful actions or omissions to act, and all persons who controlled or presently control a Defendant or were under common control of or with a Defendant within the meaning of 15 U.S.C. § 78*o* or otherwise; (b) all persons who acted or participated as underwriters, salesmen, brokers or dealers in connection with the offer or sale or distribution or resale or marketing of the Bonds, and all persons who controlled or presently control any such underwriter, salesman, broker or dealer within the meaning of the 1934 Act or otherwise; (c) all persons who received any fees, compensation, moneys, kickbacks or other payments directly or indirectly out of, or referable to, the proceeds of the Bond issue, earnings thereon, or receipts or revenues of the Project, which payments were not disclosed in or expressly provided for in the Official Statement dated May 28, 1985 or the Bond issue disclosure documents; (d) any officers, directors, principals, employees, partners or agents of Defendants May Zima, Arthur Young & Co., CPA's, Low Firm, Parker Firm, Buchanan & Co., Inc. or Whiteside Firm or Wyche Firm; and (e) transferees of any such Excluded Persons who acquired or took any Bonds without paying full and adequate consideration (free of agreements to re-purchase or reimburse) or with notice or knowledge of, or participation in, the conduct of an Excluded Person.

Also excluded from the Plaintiff Class are those persons who have timely filed an Exclusion (opt-out) Request which has not been revoked or rescinded. The Court reserves the right, by separate order, to admit (or readmit) any Class Members that come within the above definition and who filed an exclusion request or opt-out request and who notify or have notified the Court they wish to rescind such opt-out request.

Pursuant to the Mailed Notice which advised Class Members of the proposed Plan of Allocation of Settlement Funds, and the absence of any objection by any Class Member thereto, and based upon the record in this action, the Court finds as fair, reasonable and adequate, and will establish and does hereby order the establishment of, only for purpose of distribution of the Settlement Funds, two sub-funds, Fund A (consisting of 90% of the net proceeds of the entire Settlement Funds remaining after deduction of any court-approved expenses or fees), and Fund B (consisting of 10% of the net proceeds of the entire Settlement Funds remaining after deduction of any court-approved expenses or fees), and three subclasses of Class Members, and allocations therefrom shall be made as follows:

*Subclass One:* Class members who purchased or acquired their Bonds during the Class Period as above defined and who still hold such Bonds are in this subclass. Such Subclass One members shall share in the both Fund A and Fund B of the Settlement Fund based upon the difference between their cost basis in their Bonds (as determined from the Proof of Claim and other materials obtained or submitted) and any amounts they have previously been distributed by The South Carolina National Bank as Trustee ("SCNB") since January 1, 1988 with respect to such Bonds. No one who does not have a loss, or who has already recovered an amount equal to or exceeding his, her or its cost basis in such Bonds, shall be entitled to receive any further distribution from the Settlement Fund.

*Subclass Two:* Class Members who purchased or acquired their Bonds during the Class Period as above defined and who have, prior to the date of distribution, sold such Bonds are in this subclass. Such Subclass Two members shall share solely in Fund A of the Settlement Fund based upon

the difference between their cost basis in their Bonds (as determined from the Proof of Claim and other materials obtained or submitted) and the sum of (i) any amounts they have previously been distributed by SCNB with respect to such Bonds after January 1, 1988 plus (ii) the gross proceeds of sale of their Bonds (again, as determined from the Proof of Claim and other materials obtained or submitted). No one who does not have a loss, or who has already recovered an amount equal to or exceeding his, her or its cost basis in such Bonds, shall be entitled to receive any further distribution from the Settlement Fund once such cost basis has been recovered.

*Subclass Three:* Any Class Member not falling into either Subclass One or Two. Such Subclass Three members shall share solely in Fund B of the Settlement Fund based upon the difference between their cost basis in their Bonds (as determined from the Proof of Claim and other materials obtained or submitted) and the sum of any amounts they have previously been distributed by SCNB with respect to such Bonds after January 1, 1988. No one who does not have a loss, or who has already recovered an amount equal to or exceeding his, her or its cost basis in such Bonds, shall be entitled to receive any further distribution from the Settlement Fund once such cost basis has been recovered. Any sums in Fund B not needed to compensate Class members in Subclass Three shall be reallocated to and added to Fund A.

5. *Settlement Bar Order.* There are hereby barred and extinguished, and all non-settling Defendants in or to this action, as more particularly defined below (and any heirs, executors, representatives, successors and assigns of any non-settling defendant), are hereby permanently barred and enjoined from instituting, filing, maintaining, prosecuting or continuing to prosecute, either directly, indirectly, representatively, or in any other means or capacity, any and all existing and future claims against, and liability of, every Settling Defendant by and to any non-settling Defendant (including within said term as used herein Defendants C.D. Stone, James A. Stone, UNICO Development Services, Inc., United Medical Surgical & Supply Corp.,

JoAnne J. Randall, James R. Randall, Heritage Living Centers, Kenny O. Merritt, Robert M. Buchanan, Buchanan & Co., Inc., May Zima & Co. and its former partners and employees named in the First Amended Complaint and not heretofore dismissed, and Retirement Horizons, Inc.) now or hereafter named in this action or any other action relating to the Bonds, and by and to any successor, assign, heir, predecessor, representative, principal, employee, insurer, or subrogee of any such non-settling Defendant, for contribution or indemnity or any form of recoupment, reimbursement, liability or recovery under any provision of federal or state law in respect of any judgment, settlement or recovery obtained by Plaintiffs or the Class or any subclass thereof from any or all of the non-settling Defendants, or in respect of any fees and expenses incurred by such non-settling Defendant(s), for claims asserted or which may in the future be asserted in this action or in any other action relating to the Bonds. This injunction and bar applies to any form of such action or attempted action, including without limitation any claim by way of third-party or subsequent-party complaint, cross-claim, separate action, or otherwise. There is also barred and extinguished, as to Settling Defendants, any liability, claim or action, relating to the Bonds, based upon a non-settling Defendant's alleged purchase or ownership of any Bonds, or a non-settling Defendant's alleged status as a client of a Settling Defendant or as a person to whom such Settling Defendant owed a legal duty which allegedly was breached by any Settling Defendant. Any and all claims by the Settling Defendants against such non-settling parties shall be and are reciprocally barred, extinguished and enjoined with respect to the Settlement Consideration provided for in the Settlement Stipulations and the costs and expenses of this litigation, to the same extent that claims of such non-settling parties are barred against the Settling Defendants. The amount of any judgment obtained by Plaintiffs against non-settling defendants shall be reduced by the amount, if any, for which the Settling Defendants would, in the absence of this

Bar Order and Final Judgment, be liable to the non-settling Defendants by way of claims for contribution, indemnity, or otherwise, whether in this action or in any other actions relating to the Bonds. The amount of such reduction or credit, if any, to which any non-settling Defendant shall or may be entitled shall be determined by this Court (or such other court where such claims are pending) in accordance with principles of law and equity and procedures then applicable, the Court having decided that it is not necessary for the purposes of, or the finality of, or the effectiveness of, this Bar Order that such reduction or credit determination (or the procedures and methods of making such reduction or credit determination, including right to jury trial issues) be adjudicated at this time.

6. The applications of Plaintiffs and their counsel for approval and reimbursement of fees and expenses and for setting aside, in the custody of SCNB, of a further litigation fund of $200,000 out of the aggregate Settlement Consideration on hand in the registry of this Court are hereby APPROVED as fair, reasonable and adequate, and the Clerk is ordered and directed to take the necessary and appropriate steps to carry out the payment of such amounts applied for.

7. This Court expressly finds and determines that there is no just reason for delay in the entry of this Order as a Final Judgment approving said Settlement Stipulations pursuant to paragraph 1 above, dismissing with prejudice and releasing claims, on a pro tanto basis, as specified in paragraph 3 above, barring certain claims by non-settling Defendants and by Settling Defendants as provided in paragraph 6 above, determining a final Class and certain subclasses for fund allocation purposes with respect to claims against the Settling Defendants as provided in paragraph 5 above, approving reimbursement of fees and expenses and setting aside of a litigation fund as provided in paragraph 7 above, and approving the notice to the class under paragraph 2 above. Accordingly, the Clerk of this Court is hereby expressly ORDERED and DIRECTED to enter this Order and Final Judgment as a Final Judg-

ment pursuant to Rule 54(b), Federal Rules of Civil Procedure.