Hymen P. GOLDWATER, Plaintiff,

v.

ALSTON & BIRD, Price Waterhouse, Centerre Trust Company, Centerre Bancorporation, Hospital Management Associates, Inc., (H.M.A.) and H.M.A., Inc., the Jones, Bird & Howell Partners, Jones, Bird & Howell and Peter Wright, Jack Hereth, Futra Industries, Inc., and Hereth Jones, Inc., Gallop, Johnson & Neuman and J. Neil Huber, Donald Gallop, Allan Johnson, Sanford, Neuman, Thomas Lewin, P. Terence Crebs, and Stephen Rovak, Mt. Vernon Hospital, Inc., Jefferson County Health Facilities Authority, Inc., Michael A. Alexander, Robert O. Kent, Kenneth Martin, Jr., William D. Thackery, Floyd Collins and Max W. Schurtz, Peter Orr, Defendants.

Civ. No. 85–4302.

United States District Court,
S.D. Illinois,
Benton Division.

Nov. 7, 1986.

See also 116 F.R.D. 342.

G. Keith Phoenix, Kenneth W. Bean, Robert Ritter, Paul C. Hetterman, St. Louis, Mo., R. Alan Stotsenburg, David C. Harrison, Donna Glasgow, New York City, for plaintiff.

Mary Bonarcorsi, W. Stanley Walch, Barry Short, Daniel Claggett, Michael Vitale, St. Louis, Mo., Richard Boyle, Belleville, Ill., Paul D. Giamanco, Mt. Vernon, Ill., Al J. Pranaitis, Alton, Ill., Rebecca Jackson, David Slavkin, Frederick H. Mayer, Timothy K. Kellett, St. Louis, Mo., Lawrence A. Farese, Cummings & Lockwood, Naples, Fla., Joseph R. Davidson, Granite City, Ill., Peter J. Anderson, Kirk McAlpin, Atlanta, Ga., R.W. Wilson, Edwardsville, Ill., James Spiotto, Rick Bailey, Chapman & Cutler, Chicago, Ill., William Cobb, H. Marshall Korschun, Atlanta, Ga., Michael Pitzer, John Cunningham, Brown, James & Rabbitt, P.C., Mark G. Arnold, St. Louis, Mo., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on the motions to dismiss of the following defendants:

1. Price Waterhouse
2. Centerre Trust Company
3. Hospital Management Associates, Inc. (HMA) and H.M.A., Inc.
4. The Jones, Bird & Howell Partners
5. Jones, Bird & Howell and Peter Wright
6. Alston and Bird
7. Jack Hereth; Futra Industries, Inc.; and Hereth Jones, Inc.
8. Gallop, Johnson & Neuman and J. Neil Huber
9. Donald Gallop, Allan Johnson, Sanford Newman, Thomas Lewin, P. Terence Crebs, and Stephen Rovak
10. Mount Vernon Hospital, Inc.; Jefferson County Health Facilities Authority, Inc.; Michael A. Alexander; Robert O. Kent; Kenneth Martin, Jr.;

William D. Thackery; Floyd Collins and Max W. Schurtz.

The case arises from plaintiff's purchase of First Mortgage Medical Facility Revenue Bonds ("the bonds") from the Jefferson County Health Facilities Authority ("the Authority"). The purpose of the bond issue was to acquire an existing health care facility in Mount Vernon, Illinois and to convert it into a combined acute care hospital and nursing home. The bond offering closed on August 19, 1980.

Plaintiff seeks relief on behalf of a class of all persons who purchased the bonds prior to their default in February, 1982. Fifty-one defendants have been named in this suit. Plaintiff alleges, in brief, that defendants engaged in a scheme to market bonds on the tax exempt bond market, that the sale of the bonds constituted a fraud on the tax exempt bond market, and that plaintiff and the class relied upon the integrity of the tax exempt bond market in making their investment decision. (Plaintiff's Complaint ¶¶ 75 & 76). The complaint seeks relief pursuant to section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5; and the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(a),(b) & (c). Plaintiff's complaint also sets forth pendent state law claims against various defendants for negligence and breach of contract.

There are certain issues that are common to all of the motions to dismiss. Various other issues have been raised only by certain individual defendants. The Court will first address those particular issues raised by individual defendants, and will then discuss those issues common to all of the motions. The Court notes that for purposes of defendants' motions to dismiss, all allegations in the complaint must be accepted as true. The complaint should not be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King and Spald-*

*ing,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

## FACTS

According to the complaint, the alleged "scheme" originated with the financial difficulties of a 50–bed hospital known as Jefferson Memorial Hospital Association ("Jefferson Hospital") located in Mount Vernon, Illinois. Jefferson Hospital eventually filed for bankruptcy, and as of November, 1979, the hospital was closed.

Jefferson Hospital, however, had previously obtained a permit from the Illinois Department of Health to relocate to two nearby nursing homes, Hickory Grove Manor and View Manor, with plans to convert those facilities into a combined acute care hospital and nursing home. Art Lewis and Glen Lewis, the promoters of the alleged scheme, arranged an agreement between Jefferson Hospital and two of their corporations, UDE Corporation and UDE, Inc.,[1] pursuant to which 1) UDE Corporation would develop the project and secure financing, and 2) UDE, Inc., its wholly owned subsidiary, would be retained as general contractor. UDE Corporation, however, could not obtain sufficient financing for the conversion. Art and Glen Lewis, through the Grove Partnership and the View Partnership, purchased the Hickory Grove Manor and the View Manor facilities. (Art and Glen Lewis were each one of two general partners of Grove Partnership and View Partnership.) The purchase price for the properties was $1,326,000.

Art and Glen Lewis, with the aid of their attorneys, J. Neil Huber and Gallop, Johnson and Neuman, then formed the Jefferson County Health Facilities Authority, Inc. ("the Authority") to issue bonds for the purpose of financing the renovation and conversion of the properties by their construction firm. Art Lewis, with the aid of his attorneys, also formed Mount Vernon Hospital ("the Hospital"), a purported not-for-profit corporation, to lease the facilities from the Authority. The Hospital's lease payments were expected to provide for debt service. The complaint alleges

---

**1.** These corporations are not named as defendants because they filed for bankruptcy in 1982.

that the Hospital then retained UDE, Inc. as the general construction agent for a contract price of $3,600,000, and UDE Corporation as the design architect for a contract price of $440,000. Plaintiff alleges that neither contract was an arms-length transaction. (Plaintiff's Complaint, ¶¶ 50 & 51).

Mount Vernon Hospital allegedly had no experience in managing health facilities, and as a result, HMA was retained to manage the facility. According to the complaint, UDE, Inc. agreed to pay HMA $180,000 out of bond proceeds and to guarantee $250,000 in working capital. Centerre Trust provided a line of credit to UDE, Inc. in order for it to meet its guarantee.

The project eventually ran into financial difficulties. Plaintiff alleges, for example, that although Price Waterhouse's financial forecast stated that the Hospital would gross $4,215,135 and have an operating profit of more than $1,000,000 for the nine months of operation in 1981, the Hospital actually had an operating net loss of $2,396,252 for an eleven month period from April, 1981 to March, 1982. (Plaintiff's Complaint, ¶ 63). In February, 1982 the Hospital defaulted on its debt service obligation to the bondholders.

Plaintiff alleges the following: 1) The financial forecast prepared by Price Waterhouse was materially misleading; 2) the legal opinion issued by Gallop, Johnson & Neuman stated that Mount Vernon Hospital was a not-for-profit corporation, when in fact Gallop, Johnson knew that the Hospital had not met the requirements for not-for-profit status; 3) each bond certificate and accompanying legal opinion contained a statement that the bonds were tax exempt, when in fact they were not, since, among other reasons, neither the issuer (the Authority) nor the Hospital were nonprofit corporations; 4) the legal opinion issued by Jones, Bird & Howell, bond counsel, falsely stated that interest on the bonds was tax exempt; and 5) each bond certificate and accompanying legal opinion contained a statement that the bonds were exempt from registration with the SEC, when in fact they were not.[2] Plaintiff further alleges that because of the defendants' scheme, "the bonds are worthless, and the holders of the bonds have been damaged." (Plaintiff's Complaint, ¶ 71).

## STATUTE OF LIMITATIONS

■ The applicable statute of limitations in the present case is the three year limitation imposed by Ill.Rev.Stat. ch. 121½, § 137.13(D). *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1004 (7th Cir. 1984). Plaintiff alleges that he agreed to purchase the bonds in July, 1980 and that he accepted them when they were delivered after the August 19, 1980 closing. The complaint was initially filed November 14, 1984. Plaintiff then filed his First Amended Complaint, in which he named thirty-eight additional defendants, on February 1, 1985. Defendants Price Waterhouse; HMA; H.M.A., Inc.; Gallop, Johnson, & Neuman; J. Neil Huber; D. Gallop; A. Johnson; S. Neuman; T. Lewin; P. Terence Crebs; S. Rovak; J. Hereth; Futra Industries, Inc.; and Hereth, Orr & Jones, Inc. contend that the complaint should be dismissed since it was not filed within the three year statute of limitations.

The Seventh Circuit, however, has held that "[t]he federal doctrine of equitable tolling is available [in federal securities violation cases] to determine when the limitations period begins to run." *Suslick*, 741 F.2d at 1004. As stated by the Court of Appeals in *Suslick*:

Equitable tolling applies in two situations. First, the doctrine will toll the running of the statute of limitations where the fraud goes undiscovered even though the defendant does nothing to conceal it. The plaintiff, however, must exercise due diligence in attempting to uncover the fraud. In the second situation in which equitable tolling applies,

---

**2.** These allegations, and others, are set forth in greater detail in the complaint. The Court has attempted to highlight those allegations that constitute the core of plaintiff's complaint.

Likewise, the role of each defendant is set forth in more detail in the complaint and will not be repeated here.

the fraud goes undiscovered because the defendant has taken positive steps after commission of the fraud to keep it concealed. This type of fraudulent concealment tolls the limitations period until actual discovery by the plaintiff.

*Id.* In paragraph 70 of the complaint, plaintiff alleges as follows:

Neither Plaintiff nor any other purchaser of the bonds had discovered, nor could have discovered in the exercise of reasonable diligence, the untrue or misleading statements of material facts and material omissions prior to their actual discovery in May, 1984. This was because of the fraudulent concealment by the Defendants of the conspiracy and the false and misleading nature of the statements made. The fraudulent concealment included a series of letters written by the trustee and the underwriter to the Plaintiff and members of the class which had the purpose and effect of misleading them.

Defendants contend, nonetheless, that these allegations are vague and ambiguous and do not meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

In *Tomera v. Galt,* 511 F.2d 504 (7th Cir.1975), the court held that the following allegation of fraudulent concealment was sufficient to avoid summary disposition on a statute of limitations challenge:

[D]uring the period commencing on or about January 1, 1968 and continuing to the present, the defendants herein engaged in a continuing scheme and artifice to defraud investors, including plaintiffs, in connection with the purchase, solicitation, offer and sale of the unregistered securities as aforesaid, in further violation of Section 10–b[10(b)] of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission promulgated thereunder.

*Id.* at 509–10. Likewise, in the present case, the Court finds that the complaint sufficiently alleges active concealment by the defendants, and that under the doctrine of equitable tolling, the statute of limitations did not begin to run until May, 1984.

In relation to the statute of limitations question, defendants Gallop, Johnson, Neuman, Lewin, Crebs and Rovak ("Gallop Partners") contend that 1) the three year limitations period started to run, at the latest, in February, 1982 when the bonds defaulted;[3] 2) the Gallop Partners received service of process on June 18, 1985; and 3) they were therefore not served until four months after the statute of limitations had expired. Defendants further contend that under Illinois law, if the plaintiff fails to exercise reasonable diligence to obtain service after the expiration of the statute of limitations, the unserved defendants should be dismissed with prejudice. *See* Ill.Rev. Stat. ch. 110A, § 103. Without deciding whether Illinois law controls the question at issue, the Court finds that defendants' argument has no merit. The Court has already held that, based upon the allegations in the complaint, the statute of limitations did not begin to run until May, 1984. Therefore, the Court can only conclude, at this time, that the Gallop Partners were served within the three year limitations period.[4]

## PERSONAL JURISDICTION AND VENUE

The law firm of Jones, Bird & Howell acted as bond counsel and as counsel to the underwriter. Peter Wright, a partner of Jones, Bird & Howell and a defendant in this suit, was in charge of the firm's activities as bond counsel. The other Jones, Bird & Howell partners ("JB & H Partners") apparently rendered no legal assist-

---

**3.** Even assuming *arguendo* that the statute of limitations started to run in February, 1982, plaintiff's First Amended Complaint, filed on February 1, 1985, was clearly filed within the three year limitations period.

**4.** In their Reply Memorandum, defendants argue, in the alternative, that service was not timely under Rule 4(j) of the Federal Rules of Civil Procedure. It appears that this argument involves matters outside the pleadings, and is therefore more appropriately raised, if at all, in a motion for summary judgment.

ance and had no contacts with the State of Illinois in connection with the bond issue. They are named as defendants solely to permit enforcement of a judgment against their assets in the event the assets of the Jones, Bird & Howell partnership are insufficient to satisfy any judgment plaintiff may obtain. (Plaintiff's Complaint, ¶ 8). The JB & H Partners contend that this Court has no personal jurisdiction over them since they were not involved in the instant transaction and since they have no contacts with Illinois. (Jones, Bird & Howell appears to raise the same argument in an Amended Motion to Dismiss.) The same argument was raised by Jones, Bird & Howell in the district court of Hawaii, and was expressly rejected by that court. *See Goldwater v. Alston & Bird, et al.,* CCH Fed.Sec.L.Rep. ¶ 92,007 (D.Hawaii 1985) [Available on WESTLAW, DCT database]. The Court finds that defendants' argument in the present case should be rejected for the same reasons.

Section 27 of the Securities Exchange Act of 1934, alleged by plaintiff as a basis for this Court's jurisdiction, authorizes nationwide service of process. 15 U.S.C. § 78aa. As noted by the Hawaii district court, "[s]everal courts of appeal ... have held that where a plaintiff is suing under a federal statute in which Congress has authorized nationwide service of process, due process requires only that the defendant have minimum contacts with the United States." *Id.* at 90,988. The Seventh Circuit has expressly so held. *See Fitzsimmons v. Barton,* 589 F.2d 330, 332–34 (7th Cir.1979). Jones, Bird & Howell, as well as the JB & H Partners, clearly have sufficient minimum contacts with the United States to permit this Court to exercise personal jurisdiction over them.

■ The same defendants also move to dismiss the complaint on the basis of improper venue. Venue in this case is governed by section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.[5] Under that statute, venue is proper in the

district where any act or transaction constituting the violation occurred, or in the district where the defendant is found or is an inhabitant or transacts business. "Venue is proper as to *all* defendants if *one* act in furtherance of the alleged unlawful scheme is done in the forum district." *Stewart v. Fry,* 575 F.Supp. 753, 755 (E.D.Mo.1983) (emphasis in original). "One act is sufficient, and that act need not be the core of the claim but rather something more than an immaterial part of the claim." *Id.* In the present case, plaintiff alleges that venue is proper in this district "since numerous acts and transactions constituting the violations that are the basis of the complaint occurred in the Southern District of Illinois." (Plaintiff's Complaint, ¶ 3). The Court finds that plaintiff has therefore properly pled venue as to all defendants.

■ Defendants contend that even if venue is proper as to plaintiff's 10b–5 claims, it is not proper for the RICO claims. Plaintiff alleges that venue is proper under 18 U.S.C. §§ 1965(a) & (b) since defendants transacted business in this district, and further alleges that the ends of justice require that all parties be brought before this Court. The Court finds that venue is proper as to Jones, Bird & Howell and as to the JB & H Partners under section 1965(b), which provides:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

*See also Farmers Bank v. Bell Mortgage Corporation,* 577 F.Supp. 34, 35 (D.Del. 1978). Therefore, the motions to dismiss for lack of personal jurisdiction and for improper venue are denied.

---

5. When suit is brought under the 1933 and 1934 Federal Securities Acts, venue may be determined under the broader provisions of the 1934

Act. *Martin v. Steubner,* 485 F.Supp. 88, 90 (S.D.Ohio 1979).

## MISCELLANEOUS MOTIONS

Alston & Bird has moved for summary judgment on the basis that the alleged acts upon which the liability of Alston & Bird is premised occurred prior to the admission of Peter Wright to the Alston & Bird partnership, and thus were not within the legitimate scope of the partnership business. (Peter Wright, a partner of Jones, Bird & Howell, was in charge of that firm's activities as bond counsel. In December, 1982, as the result of a merger, that partnership became Alston & Bird, and it was at that time that Peter Wright was admitted to the Alston & Bird partnership. Alston & Bird's liability is premised solely upon the allegation that it is a successor to Jones, Bird & Howell. Alston & Bird argues that it is not a successor and that Peter Wright's activities as bond counsel occurred prior to his admission into the Alston & Bird partnership in 1982.)

In a similar vein, Jones, Bird & Howell contends that the complaint against it should be dismissed on the basis that it cannot be served with process and no action can be maintained against it since it was dissolved in June, 1983. The motions raised by Alston & Bird and Jones, Bird & Howell involve matters outside the pleadings and are therefore not properly considered in a motion to dismiss. If defendants so desire, they may resubmit these arguments to the Court in separately filed motions for summary judgment.

## FRAUD ON THE MARKET

Plaintiff alleges that the sale of the bonds constituted a "fraud on the tax exempt bond market." Several federal courts of appeals have recognized the "fraud on the market" theory of liability in 10b–5 securities fraud cases. *See, e.g., Lipton v. Documation, Inc.,* 734 F.2d 740 (11th Cir.1984); *T.J. Raney & Sons, Inc. v. Fort Cobb, Oklahoma Irrigation Fuel Authority,* 717 F.2d 1330 (10th Cir.1983); *Panzirer v. Wolf,* 663 F.2d 365 (2d Cir. 1981), *vacated as moot sub nom. Price Waterhouse v. Panzirer,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982);

*Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) (en banc); *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975). *See also Grossman v. Waste Management, Inc.,* 589 F.Supp. 395 (N.D.Ill.1984); *Mottoros v. Abrams,* 524 F.Supp. 254 (N.D.Ill.1981). In a traditional 10b–5 case, the plaintiff must prove actual reliance on defendant's deception. The fraud on the market theory "allows a plaintiff to rely on the integrity of the market rather than requiring direct reliance on the defendant's conduct." *T.J. Raney & Sons, Inc.,* 717 F.2d at 1332. More specifically:

> The investor may rely on the expectation that securities markets are free from fraud, that market prices are validly set, and that there has been no market manipulation. In essence, the fraud-on-the-market theory enables an investor to assume that a security is accurately priced on the open market.

Wemple, *Rule 10b–5 Securities Fraud: Regulating the Application of the Fraud-on-the-Market Theory of Liability,* 18 J.Mar.L.Rev. 733, 735 (1985). "The theory is grounded on the assumption that the market price reflects all known material information. Material misinformation will theoretically cause the artificial inflation or deflation of the stock price." *T.J. Raney & Sons, Inc.,* 717 F.2d at 1332.

The Seventh Circuit has not addressed the validity of the fraud on the market theory, although a fairly recent Seventh Circuit case cites, with apparent approval, those cases that have adopted the theory. *See Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 529 (7th Cir.1985). The majority of cases that have adopted and applied the theory involved securities that were actively traded on open and developed markets. The question in this case is whether the fraud on the market theory should be applied to newly issued securities.

In *Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) (en banc), the Fifth Circuit, in a 12 to 10 decision, extended the fraud on the market theory to a new industrial development bond issue.[6] The court held that al-

---

**6.** The court's holding was based on Rule 10b– 5(1) & (3), which provide:

though plaintiff could not prove reliance on the offering circular since he had not read it, "[t]he securities laws allow an investor to rely on the integrity of the market to the extent that the securities it offers to him for purchase are entitled to be in the market place." *Id.* at 471. The court further held that in order to recover under the fraud on the market theory in a case involving new issues, plaintiff must prove the following:

> (1) [T]he defendants knowingly conspired to bring securities onto the market which were not entitled to be marketed, intending to defraud purchasers, (2) [the plaintiff] reasonably relied on the Bonds' availability on the market as an indication of their apparent genuineness, and (3) as a result of the scheme to defraud, [the plaintiff] suffered a loss.

*Id.* at 469–70.

In all of the motions to dismiss, defendants argue that the majority opinion in *Shores* is simply wrong, and that the fraud on the market theory cannot logically be applied to newly issued securities. Defendants contend that under the fraud on the market doctrine, "[t]he market is acting as the unpaid agent of the investor, informing him that given all the information available to it, the value of the stock is worth the market price." *In Re LTV Securities Litigation,* 88 F.R.D. 134, 142–44 (N.D.Tex. 1980). According to defendants, in a new issue, there is no existing market. The price is set by the underwriter, not by the market, and therefore, the rationale for the fraud on the market theory simply does not apply. (Memorandum of Price Waterhouse, p. 15). Commentators have also criticized the reasoning and decision in *Shores. See, e.g.,* Note, *The Fraud on the Market Theory,* 95 Harv.L.Rev. 1143, 1161 (1982).

At least one other circuit has adopted the *Shores* holding. In *T.J. Raney & Sons, Inc. v. Fort Cobb, Oklahoma Irrigation*

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, ...
(1) to employ any device, scheme, or artifice to defraud, ...

*Fuel Authority,* 717 F.2d 1330 (10th Cir. 1983), a case also involving a new bond issue, the court held that the plaintiff stated grounds for relief by alleging that the defendants "knowingly conspired to bring unlawfully issued ... bonds to market with the intent to defraud...." *Id.* at 1333. Similarly, other courts have either explicitly adopted *Shores* or suggested, in dicta, that the reasoning and decision in *Shores* is sound. *See, e.g., Grossman v. Waste Management, Inc.,* 589 F.Supp. 395, 402 (N.D.Ill.1984); *Rose v. Arkansas Valley Environmental & Utility Authority,* 562 F.Supp. 1180, 1205–06 (W.D.Mo.1983).

■ This Court finds that the reasoning in *Shores* is persuasive, and that the fraud on the market theory can, in appropriate circumstances, be applied to newly issued securities. Although defendants contend that this doctrine cannot logically be applied to new issues since there is no existing market, both *Shores* and *T.J. Raney* correctly suggest adoption of another "form" of this theory. In a case under the *Shores* theory, "since no market as such exists, the investor relies on the fact that the securities would not have been offered absent the scheme to defraud—in other words, upon the integrity of the market itself, rather than the integrity of [the] market's price." *Grossman,* 589 F.Supp. at 402.

■ Plaintiff alleges that defendants engaged in a scheme to market bonds on the tax exempt bond market, that the sale of the bonds constituted a fraud on the tax exempt bond market, that plaintiff relied on the integrity of the market, and that as a result of the scheme, plaintiff was damaged. Accepting these allegations as true for present purposes, the Court finds that plaintiff's complaint sufficiently states a claim for relief based upon the fraud on the market theory.

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The Court's discussion of this theory, however, cannot end here. Defendants contend that even if *Shores* was correctly decided, its application requires pleading and proof that the bonds in question were "not entitled to be marketed." The Court agrees. As stated by the court in *Shores*, "[i]f [plaintiff] proves no more than that the bonds would have been offered at a lower price or a higher rate, *rather than that they would never have been issued or marketed*, he cannot recover." *Shores*, 647 F.2d at 470 (emphasis added). In other words, plaintiff must show that, absent the fraud, the bonds could not have been sold at *any* price.

The Court disagrees, however, with defendants' interpretation of this requirement. Defendants contend that the "not entitled to be marketed" element requires pleading and proof that the issuance of the bonds was illegal under substantive state law. Defendants cite *T.J. Raney* in support of their argument. In *T.J. Raney*, the court found that the bonds in question were not entitled to be marketed since Oklahoma law prohibited issuance of those particular bonds. The holding in that case merely demonstrates one type of situation in which securities are "not entitled to be marketed," and does not impose a blanket requirement that the issuance of securities violates substantive state law.

In the present case, plaintiff alleges that but for the defendants' fraud, the bonds could never have been marketed. (Plaintiff's Complaint, ¶ 69). Whether plaintiff can prove this allegation remains to be seen. The Court finds, for present purposes only, that this allegation, together with all of the facts set forth in the complaint, satisfies the pleading requirement suggested in *Shores*.

Defendants further contend that the fraud on the market theory should not be applied to this case because the Financial Forecast and the Offering Statement fully disclosed all material facts and all substantial risks associated with the investment. Defendants cite *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511 (10th Cir.1983) in support of their argument. In that case, defendants verbally assured plaintiff that investment in the proposed business venture was a "sure thing." The Private Placement Memorandum, however, disclosed the substantial risks associated with the investment. Although the Memorandum was given to plaintiff prior to his investment, he failed to read it. In holding that plaintiff could not rely on defendants' oral representations of a "sure thing" since the written memorandum disclosed all risks, the court stated, "[I]t is our view that knowledge of information contained in a prospectus or an equivalent document authorized by statute or regulation, should be imputed to investors who fail to read such documents." *Id.* at 1518.

Plaintiff alleges, however, that he did not receive an Offering Statement, that he therefore could not have read it, and that *Zobrist* is thus inapplicable. Whether plaintiff received the Offering Statement is clearly a question of fact that cannot be resolved on a motion to dismiss. Therefore, the Court will not, at this time, address the issue of whether plaintiff's complaint should be dismissed based upon the reasoning and decision in *Zobrist*.[7]

## SECTION 17(a) OF THE SECURITIES ACT

Defendants argue that plaintiff's claim for violation of section 17(a) of the 1933 Securities Act[8] should be dismissed be-

7. In the memorandum supporting their motion to dismiss, defendants Gallop, Johnson & Neuman and J. Neil Huber similarly argue that even if their opinion letter falsely stated that Mount Vernon Hospital was a nonprofit corporation (which they by no means concede), the Offering Statement clearly disclosed that whether the Hospital would receive such status was questionable. As noted above, whether plaintiff received the Offering Statement is a question of fact, and therefore, defendants' argument cannot be addressed at this time.

8. Section 17(a) provides:
   (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
   (1) to employ any device, scheme, or artifice to defraud, or
   (2) to obtain money or property by means of any untrue statement of a material fact or any

cause no private right of action exists under that section. Plaintiff contends that in *Daniel v. International Brotherhood of Teamsters, etc.*, 561 F.2d 1223 (7th Cir. 1977), the Seventh Circuit expressly held that section 17(a) does create a private right of action. Recent Seventh Circuit decisions, however, have specifically stated that "[w]hether section 17(a) can be enforced by private damage suits is an open question in this circuit. . . ." *Peoria Union Stock Yards Co. v. Penn Mutual Life Insurance Co.*, 698 F.2d 320, 323 (7th Cir. 1983). *See also Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530–31 (7th Cir.1985). With respect to the *Daniel* decision, the court in *Teamsters* noted that "the [Supreme] Court's reversal of our judgment [in *Daniel* ], coupled with its express refusal to decide the § 17(a) issue . . . removed the authority of the discussion in *Daniel.*" *Id.* It thus appears that the decision in *Daniel,* while not expressly overruled, is no longer authoritative. The question at issue is obviously still an open one in this circuit.

■ The Fifth Circuit, however, has held that no private right of action exists under section 17(a). *See Landry v. All American Assurance Co.*, 688 F.2d 381 (5th Cir. 1982). Likewise, at least two district courts in this circuit have reached the same conclusion. *See Beck v. Cantor, Fitzgerald & Co., Inc.*, 621 F.Supp. 1547, 1560 (N.D.Ill.1985); *Roskos v. Shearson/American Express, Inc.*, 589 F.Supp. 627, 630 (E.D.Wis.1984). This Court finds the decision in *Landry* to be well reasoned and persuasive, and particularly agrees with the observation in *Roskos* that "[t]o permit a private right of action under § 17(a) would cause the statutory and judicially-crafted restrictions on § 10(b) of the 1934 Act and §§ 11 and 12 of the 1933 Act to atrophy and fall away as securities fraud cases hustled in the back door of § 17." *Roskos*, 589 F.Supp. at 631. The Court therefore holds that no private right of

action exists under 17(a), and accordingly dismisses plaintiff's section 17(a) claims.

## PLEADING FRAUD

Defendants contend that plaintiff has failed to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. The same argument was raised by defendants Gallop, Johnson & Neuman; J. Neil Huber; HMA; and H.M.A., Inc. in the district court of Hawaii and was expressly rejected by that court. *See Goldwater v. Alston & Bird, et al.*, CCH Fed.Sec.L.Rep. ¶ 92,007 at 90,989 (D.Hawaii 1985) [Available on WESTLAW, DCT database].

This Court also finds that the complaint, which is 35 pages in length, adequately satisfies the pleading requirements of Rule 9(b). As noted by the court in *Onesti v. Thomson McKinnon Securities*, 619 F.Supp. 1262 (N.D.Ill.1985), "Rule 9(b)'s more stringent requirements must be read in conjunction with Rule 8, which requires a short and plain statement of the claim." *Id.* at 1265 (citing *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir.1975)). *See also Rose v. Arkansas Valley Environmental & Utility Authority*, 562 F.Supp. 1180 (W.D.Mo. 1983). In the present case, "[d]efendants have been given notice of the alleged fraud sufficient to allow adequate responsive pleading. . . . In a securities fraud case, plaintiffs are not required '. . . to set forth facts which, because no discovery has yet occurred, are in the exclusive possession of defendants.'" *Banowitz v. State Exchange Bank*, 600 F.Supp. 1466, 1469 (N.D. Ill.1985) (citations omitted). The Court therefore denies defendants' motions to dismiss based on failure to plead fraud with particularity.

Accordingly, defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART. Plaintiff's claims based on section 17(a) of the 1933 Securities Act are hereby DISMISSED. Defendants' motions to dismiss (Document Nos. 102, 105,

---

omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

115, 116, 117, 120, 123, 124, 128, and 130) are otherwise hereby DENIED.

IT IS SO ORDERED.