The **SOUTH CAROLINA NATIONAL BANK, et al., Plaintiffs,**

v.

**C. Donald STONE, et al., Defendants.**

Civ. A. No. 7:88–791–17.

United States District Court,
D. South Carolina,
Spartanburg Division.

Aug. 20, 1991.

C. Donald Stone, pro se.

Buchanan & Co., pro se.

Robert M. Buchanan, pro se.

Unico Development Services, Inc., pro se.

Robert Lowry Wylie, III, Law Office, Greenville, S.C., for United Medical & Surgical Supply Corp.

Kenny O. Merritt, pro se.

Gregory Alan Morton, Donnan & Morton, Greenville, S.C., for James Aaron Stone.

B. Joel Stoudenmire, John A. Hagins, Jr., Brown & Hagins, P.A., Greenville, S.C., for C. Benjamin Smith, Ann H. Smith, Benan, Inc.

Retirement Horizons, Inc., pro se.

John J. Bandy, Sr., pro se.

Tom L. Sizemore, pro se.

Steven Edward Farrar, Robert Frank Plaxco, James H. Watson, Greenville, S.C., for Horace C. Smith, Whiteside, Smith, Jones & Duncan.

Nathaniel Heyward Clarkson, III, Greenville, S.C., for J.W. Wakefield.

Harold Fleming, pro se.

Joseph M. Jenkins, Jr., Greenville, S.C., for J.R. Randall.

Theodore Sanders Stern, Jr., Greenville, S.C., for Parker & Kotouc, Thomas Kotouc.

S. Keith Hutto, Walker DuVall Spruill, Columbia, S.C., for Low & Furby, John T.C. Low.

Geoffrey B. Schwartz, Huey, Guilday, Kuersteiner & Tucker, Tallahassee, Fla., William Jordan, Greenville, S.C., Wilmot B. Irvin, Robert Erving Stepp, Columbia, S.C., for Mayzima & Co., Judith Baker, Maurice A. Barineau, Lawless J. Barrientos, William J. Boshell, Edwin Chase, Redford A. Cherry, Frederic E. Dehon, Charles B. Eldridge, Rene G. Fernandez, William L. Gaddoni, Harry G. Harrell, David M. Johnston, Robert L. Johnson, Kathryn F. Krause, Charles L. Lester, S. Jock McElroy, Robert D. May, Ronald R. Moats, Robert E. Salveson, William Schapley, Marvin Shams, Roy E. Southwick, John P. Thomas, John P. Vodennicker, Wallis L. Walker, Jr., Robert B. Weir, David P. Yon, John A. Yonkosky, William A. Walter, Richard M. Young, Donald A. Zima.

Vessie Jean Burkins, Robert Julian Thomas, Columbia, S.C., for William E.S. Robinson, Robinson, Mendoza, Barton & McCarthy.

Heyward E. McDonald, Columbia, S.C., for Wyche, Burgess, Freeman & Parham.

Heyward E. McDonald, Roger E. Warin, Steptoe & Johnson, Washington, D.C., for Eric B. Amstutz.

## ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter is now before the court on the Plaintiffs' motion to certify a plaintiff class.[1] A hearing on this motion was held on this and numerous other motions before the Honorable Matthew Perry on July 19–20, 1989. On October 12, 1989, before Judge Perry ruled on the class certification motion, he recused himself from the case and the case was transferred to me. Because of the transfer, the case file was moved from Columbia to Greenville. On October 24, 1989, Magistrate Judge Catoe entered an order granting the class certification on the record before him, but he then learned that not all the briefs and other submissions had been transmitted from the Clerk's Office. Accordingly, on November 14, 1989, Magistrate Judge Catoe withdrew and vacated his order granting class certification and directed that discovery be completed before ruling upon the class certification motion. The motion is now properly before this court. Additional memoranda have been received by the court and the parties were heard on this issue again on August 12, 1991. For good cause shown, this motion is hereby granted.

### GENERAL CLASS ACTION PRINCIPLES

■ Violations of federal securities laws are particularly well suited for class action treatment. *Dolgow v. Anderson*, 43 F.R.D. 472, 488 (E.D.N.Y.1968), (citing Advisory Committee Notes to Rule 23, 39 F.R.D. 73, 102–103); *Unicorn Field, Inc. v. Cannon Group, Inc.*, 60 F.R.D. 217, 221 (S.D.N.Y.1973). Actions based upon securities fraud are among the most usual class actions brought under Rule 23(b)(3). Such suits commonly involve large numbers of investors, each with a small individual claim, who, without the class action device, might have no practical recourse due to the high costs of litigation. For this reason,

class actions are the most efficient way of enforcing the securities regulations, and courts have tended to be liberal in certifying them. 3B Moore and Kennedy, *Moore's Federal Practice* ¶ 23.02 [2.–19] (2d ed. 1987). Due to the importance of the class action device in the context of suits by aggrieved purchasers of securities, "the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing the class action." *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *see also Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766.

### THIS ACTION MEETS THE RULE 23 PREREQUISITES FOR CLASS CERTIFICATION

FED.R.CIV.P. 23 establishes a two part test for class action certification: the action must satisfy all four subparts of Rule 23(a) and it must also satisfy the additional prerequisites of either Rule 23(b)(1), 23(b)(2) or 23(b)(3). Plaintiffs seek certification of a plaintiff class pursuant to Rule 23(b)(3).

A. Initial Requirements of Rule 23(a)

Rule 23(a) provides in pertinent part:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

1. *Proposed Class is so Numerous that Joinder of all Members is Impracticable—Rule 23(a)(1)*

■ The trustee bank's bondholder list contains the names of approximately 1,765

---

1. The history of this case, both factual and procedural, can be found in *South Carolina Nat'l*

*Bank v. Stone,* 749 F.Supp. 1419 (D.S.C.1990).

bondholders. This large number of bond purchasers clearly satisfies the requirement of "numerosity."

### 2. There are Questions of Law and Fact Common to all the Potential Class Members—Rule 23(a)(2)

■ This securities fraud action is based primarily on omissions of material facts, a fraudulent course of conduct, a fraud on the undeveloped market, aiding and abetting liability, and controlling person liability, theories which necessarily involve common questions of both law and fact. There are numerous questions of law and fact common to all the class members presented in this case, the most important of which include whether the alleged omitted facts were, in fact, omitted, whether they were material and whether the named plaintiffs can satisfy the elements of the claims asserted. These common issues are sufficient to satisfy the requirement of Rule 23(a)(2) that there be some issue of law or fact common to all the class members.[2]

### 3. Claims of the Representative Plaintiff are Typical of the Claims of the Potential Class Members—Rule 23(a)(3)

■ Properly considered, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his claims are based on the same legal theory." 1 H. Newberg, *Newberg on Class Actions* § 3.13, at 167 (2d ed. 1985). Typicality is rarely lacking in securities class actions. *Miller v. Central Chinchilla Group, Inc.,* 66 F.R.D. 411, 414 (S.D.Iowa 1975). Allegations that the plaintiffs' securities purchases arose out of the defendants' common course of conduct satisfy the typicality requirement. *See, e.g., Kaufman v. Lawrence,* 76 F.R.D. 397 (S.D.N.Y.1977); *Epstein v. Weiss,* 50 F.R.D. 387, 390 (E.D.La.1970). Clearly, the

plaintiffs' purchases arose out of a common course of conduct on the part of the defendants. The actions complained of preceded or occurred simultaneously with the closing of the bond issue, and accordingly, were the same vis-a-vis the entire class.

Named plaintiffs, Gordon K. Billipp and Elizabeth W. Billipp, bought Skylyn Hall bonds. They still own their bonds, and they have suffered a loss on their bonds. They testified that, like most investors, they relied on the integrity of the market in purchasing their bonds, and they relied on the Preliminary Official Statement (POS) both directly (by reading it) and indirectly (through their broker's reliance on the POS). They are not "insiders" and have no particular "ax" to grind, other than their desire to recover their losses. These named plaintiffs are "typical" of the class members as a whole.

### 4. Named Plaintiffs and Their Chosen Counsel will Fairly and Adequately Protect the Interests of the Class—Rule 23(a)(4)

■ Contrary to defendants' assertion, the extent of the named plaintiff's knowledge of securities law and the legal niceties of his claims is not relevant to determining whether the plaintiff can adequately represent the class. *See, e.g., Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Lewis v. Curtis,* 671 F.2d 779, 789 (3d Cir.1982), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). Similarly, the named plaintiff's willingness, or lack thereof, to advance the full costs of the litigation or of class notice is irrelevant. *Rand v. Monsanto Co.,* 926 F.2d 596, 599 (7th Cir.1991).[3]

■ The principal factor in determining the adequacy of class representatives is whether the plaintiffs have the ability and commitment to prosecute the action vigor-

---

**2.** The issue of whether these common issues *predominate* over any individual issues is raised only by Rule 23(b)(3) and is addressed in the portion of this brief on that section.

**3.** It is also relevant that both South Carolina and Alabama, the states of residence of the

plaintiffs' lawyers, have adopted MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.8, which permits counsel to advance costs of litigation to their clients, with reimbursement contingent on the outcome of the case. *See also* 926 F.2d at 600.

ously. *See, e.g., Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). This inquiry involves two issues: (i) "whether plaintiffs have any interest antagonistic to the rest of the class;" and (ii) whether plaintiffs' counsel are "qualified, experienced and generally able to conduct the proposed litigation." *Kirkpatrick,* 827 F.2d at 726. *See also* 4 H. Newberg, *Newberg on Class Actions* §§ 22.21, 22.31 (2d ed. 1985).

■ The defendants have pointed to no genuine conflict between the Billipps and the class they seek to represent. It is argued that by reason of their membership on a bondholders' committee formed to consult with and advise the trustee after the bonds defaulted, the Billipps have a conflict of interest with the bondholders who did not participate on that committee. Certain defendants have alleged that the trustee, after consulting with the bondholders' committee, sold the Skylyn Hall project for too little money. Accordingly, those defendants argue that some portion of the bondholders' damages is attributable to the trustee, and potentially, to the bondholder committee by reason of the allegedly improper sale of the facility. None of these defendants, however, has adequately explained how a bondholder serving voluntarily on an advisory committee could be responsible for the trustee's actions, particularly given that a poll of all bondholders was also taken on this issue. Moreover, further analysis of this issue would require an improper determination of the merits of the case, i.e., the amount of damages caused by the defendants. *See, e.g., Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The court does not find any conflict of interest in the case.

Additionally, the defendants read the court's mandate to the district court in *Shores v. Sklar,* 647 F.2d 462 (5th Cir. 1981), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983), to require the certification of separate classes—one for the class members who did not rely directly on the prospectus and one class for those

who did so rely. Because the Billipps did rely directly upon the disclosure documents for these bonds, defendants argue that they cannot represent a separate class, or subclass, of plaintiffs who relied only on the integrity of the marketplace and not upon the disclosure documents themselves. The argument, however, was rejected by the Eleventh Circuit:

> In remanding to the district court, *Shores* instructed the court to "reconsider the maintainability of this action as a class action as to members of a properly defined class of Bond purchasers who did not ... rely [on the allegedly misrepresentative offering circular]." This instruction should not be misconstrued as an indication that the fraud-on-the-market claim would be available only to those individuals who did not rely on the circular.... The instruction did not imply, however, that those who had relied on the offering circular could not also recover under the fraud-on-the-market theory. To the extent that the district court on remand reached a different conclusion, we reject that court's interpretation of the en banc decision.

*Kirkpatrick,* 827 F.2d at 723–24 n. 4 (citations omitted).

Similarly, the district court in *Sheftelman v. Jones,* 667 F.Supp. 859 (N.D.Ga. 1987) (municipal bond issue case), rejected an identical argument, stating that "defendants assert that plaintiffs do not have typical fraud on the market claims because named plaintiffs also have a 'misrepresentation and omission' claim. The court, however, does not believe that misrepresentation and omission claims and fraud on the market claims are mutually exclusive." *Sheftelman,* 667 F.Supp. at 864. *See also, e.g., Gavron v. Blinder, Robinson & Co.,* 115 F.R.D. 318, 323 (E.D.Pa.1987). The court sees no reason why the Billipps could not have relied both upon the disclosure documents and upon the integrity of the marketplace. They accordingly appear to be typical and more than adequate representatives of the class.

The adequacy of plaintiffs' counsel, like that of the individual plaintiffs, is pre-

sumed in the absence of specific proof to the contrary. *Falcon v. General Tel. Co.,* 626 F.2d 369, 376 n. 8 (5th Cir.1980), *vacated on other grounds,* 450 U.S. 1036, 101 S.Ct. 1752, 68 L.Ed.2d 234 (1981). Furthermore, courts generally hold that the employment of competent counsel assures vigorous prosecution. *See, e.g., Berland v. Mack,* 48 F.R.D. 121, 127 (S.D.N.Y.1969). Plaintiffs' counsel have now practiced before this court in a number of securities fraud class actions, and the court is aware from first-hand experience of their competency in this complex area of law. The court is satisfied that the plaintiffs and their class counsel will fairly and adequately protect the interests of the class.

B. The Second Step: Rule 23(b)(3)

As shown above, this action satisfies the requirements of all four parts of Rule 23(a). The case also satisfies the requirements of Rule 23(b)(3).

1. *Common Questions Predominate*

 The "predominance" requirement of Rule 23(b)(3) does not demand that every single issue in the case be common to all the class members, but only that there are substantial common issues which "predominate" over the individual issues. 3B Moore and Kennedy, *Moore's Federal Practice and* ¶ 23.06–1 at 23–159, 160. Common questions of law and fact clearly exist, and predominate, in this case. The only individual issue present in this case is the computation of each class member's damages, which are easily computed by having the class members supply the necessary purchase and sale information on a proof of claim form. Hence, courts uniformly hold that class actions may be appropriate even though there are differences in the amount of damages suffered by the individual class members. *See, e.g., Gerstle v. Continental Airlines, Inc.,* 50 F.R.D. 213, 219 (D.Colo.1970).

 The defendants argue, however, that reliance is a necessary element of the fraud claims, that different class members may have relied on different factors, and that the litigation surrounding the reliance issue will predominate over the common issues of whether the defendants did something wrong. For instance, the testimony of Mr. and Mrs. Billipp reflects that they read the Official Statement carefully and relied upon it in making their investments. Defendants suggest, however, that not all class members were so careful. But it is clear that an investor satisfies the reliance element by relying on his broker's advice and recommendation, who in turn relied upon the Official Statement in giving that advice. *See, e.g., Abrams v. Southeastern Municipal Bonds, Inc.,* [1990–91 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,757, 1990 WL 267363 (D.Colo.1990). Hence, "most courts have held that a requirement that the issue of reliance must be individually proved will not prevent the certification of a class action, since to rule otherwise would preclude class actions in securities fraud cases and hamper enforcement of the federal securities laws." 4 H. Newberg, *Newberg on Class Actions* § 22.46 at 94 (2d ed. 1985).

Due to the nature of the claims asserted in this case, the reliance of the individual class members is not even at issue because the plaintiffs have alleged a "fraud-on-the-market" as to the after-market or secondary market trading here, and a "fraud on the undeveloped market" (also known as "fraud created the market") as to the original issue or so-called "primary market." The United States Supreme Court in *Basic, Inc. v. Levinson,* 485 U.S. 224, 247, 108 S.Ct. 978, 991–992, 99 L.Ed.2d 194 (1988) stated its approval of a presumption of reliance in fraud-on-the-developed-market cases:

> An investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, *an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b–5 action.* (emphasis added)

The Supreme Court in *Basic* accordingly upheld a district court's certification of a plaintiff class because reliance was an insufficient individual issue to predominate

over the common issues. Reflecting a common sense approach, the Court noted, "it is hard to imagine that there ever is a buyer who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?" *Basic*, 485 U.S. at 246–247, 108 S.Ct. at 991 (quoting *Schlanger v. Four–Phase Systems, Inc.,* 555 F.Supp. 535, 538 (S.D.N.Y.1982)).

The Supreme Court has thus recognized that the purpose of the reliance element is to establish causation-in-fact; i.e., that the investors were harmed by the frauds they have alleged. When the marketplace itself is defrauded, the price of the security is artificially inflated or maintained, and as a result, anyone who purchases the security at the "market" price is harmed by the fraud, even if the individual investor did not receive or was not aware of the misleading information. The fraud affected the price of the security and caused the investor to pay too much. *See, e.g., Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522 (7th Cir.1985); *Lipton v. Documation, Inc.,* 734 F.2d 740 (11th Cir.1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985); *T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrig. Fuel Auth.,* 717 F.2d 1330, 1332–33 (10th Cir.1983) (bond fraud class action case), *cert. denied sub nom.,* 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984); *Panzirer v. Wolf,* 663 F.2d 365 (2d Cir. 1981), *cert. granted on reliance issue,* 458 U.S. 1105, 102 S.Ct. 3481, 73 L.Ed.2d 1365, *vacated as moot,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982); *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *In re Texas Int'l Sec. Litig.,* 114 F.R.D. 33 (W.D.Okl.1987); *Frankel v. Wyllie & Thornhill, Inc.,* 537 F.Supp. 730, 736–37 (W.D.Va.1982) (a bond issue class action, anticipating that Fourth Circuit will follow *Shores v. Sklar,* 647 F.2d 462); *Lewis v. Capital Mortgage Inv.,* 78 F.R.D. 295, 309 (D.Md.1977).

Although the Supreme Court in *Basic* did not address the application of the fraud on the market doctrine to newly issued securities, such as the bonds in this case, "[e]very court which has considered the theory with respect to newly-issued [municipal] bonds has approved it." *Ockerman v. May Zima & Co.,* [1988–89 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,088 at 91,090, 1988 WL 146617 (M.D.Tenn.1988) (citing *Frankel v. Wyllie & Thornhill, Inc.,* 537 F.Supp. 730 (W.D.Va.1982)). *See also, e.g., Shores v. Sklar,* 647 F.2d 462; *T.J. Raney & Sons, Inc. v. Ft. Cobb, Okla. Irrig. Fuel Auth.,* 717 F.2d 1330; *Jackson v. First Fed. Savings of Ark., F.A.,* 709 F.Supp. 863 (E.D.Ark.1988); *Anderson v. Bank of the South, N.A.,* 118 F.R.D. 136 (M.D.Fla. 1987); *Goldwater v. Alston & Bird,* 664 F.Supp. 403 (S.D.Ill.1986); *Gibb v. Delta Drilling Co.,* 104 F.R.D. 59, 67–69 (N.D.Tex.1984); *Masri v. Wakefield,* 106 F.R.D. 322, 324–25 (D.Colo.1984); *Greenwald v. Integrated Energy, Inc.,* 102 F.R.D. 65, 69–71 (S.D.Tex.1984); *Rose v. Arkansas Valley Envtl. & Util. Auth.,* 562 F.Supp. 1180 (W.D.Mo.1983); *Shores v. Arkansas Valley Envtl. & Util. Auth.,* [1979–80 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,345, 1980 WL 1391 (N.D.Ala.1980).

Most courts accordingly have carried the Supreme Court's "causation-in-fact" analysis over to undeveloped market cases. In new issue cases, however, and cases involving securities for which there is no open and efficient market that sets the security prices, the elements of satisfying reliance or causation-in-fact are modified slightly. In undeveloped market cases, the element of reliance is presumed satisfied if the plaintiffs prove that the security was not entitled to be marketed to the public, i.e., that had the truth been fully disclosed, the security could not have been sold at any price. *See Id.* This doctrine is sometimes called the "fraud *creates* the market" doctrine, because the doctrine requires the plaintiffs to prove that absent the fraud, there would have been no market at any price for the security. The Fourth Circuit has never squarely addressed the fraud on the market doctrine. However, Judge Turk in *Frankel v. Wyllie & Thornhill, Inc.,* 537 F.Supp. 730 (W.D.Va.1982), followed *Shores* and specifically opined that the Fourth Circuit would approve of the "fraud creates the market" doctrine.

Plaintiffs have adequately pleaded the existence of a fraud on the market or a fraud that created the market for the bonds. Because they are entitled to a presumption of reliance, individual issues of reliance can not predominate over the numerous common issues.

In addition, a substantial portion of the plaintiffs' claims are premised upon what the defendants failed to disclose, rather than on what was affirmatively misrepresented, and the Supreme Court ruled in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), *reh'g denied*, 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692, that when such a case involves primarily allegations of omissions to disclose material facts:

> positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.... This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact. (citation omitted)

*Affiliated Ute Citizens*, 406 U.S. at 153–54, 92 S.Ct. at 1472. Further, the omissions here are alleged to have all occurred with respect to standardized, uniform written documents, i.e., the Official Statement, or prospectus, for the bonds. Plaintiffs are therefore also entitled to the *Affiliated Ute* presumption of reliance.

Even if individual issues of reliance should arise, it is more appropriate to determine the common issues in one proceeding, which may be followed by separate hearings regarding any individual issues. *See, e.g., Davis v. AVCO Financial Services, Inc.*, 739 F.2d 1057 (6th Cir.1984), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 381 (1985) (class certification affirmed even though proof of individual reliance required); *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969) ("We see no reason why the trial court, if it determines individual reliance is an essential element to proof, cannot order separate trials on that particular issue, as on the question of damages, if necessary."). This court is accordingly of the opinion that as to the 10b–5 and RICO claims, common issues predominate over individual issues.

■ Certain defendants also argue that the common law fraud counts, as opposed to the Rule 10b–5 claims, are not entitled to a presumption of reliance under the "fraud-on-the-market" theory. Some courts, however, have expressly held that the fraud-on-the-market doctrine is applicable in common law fraud actions. For example, the court in *In re ZZZZ Best Sec. Litig.*, [1989 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,485, 1989 WL 90284 (C.D.Cal.1989), allowed plaintiffs to allege reliance through the fraud-on-the-market theory rather than requiring them to demonstrate actual reliance in their common law counts for fraud and negligent misrepresentation. In *Hurley v. FDIC*, 719 F.Supp. 27, 34 n. 4 (D.Mass.1989), the court in denying defendants' motion to dismiss the common law fraud claim, noted that although no Massachusetts court had ruled on the issue, it believed that "if the Supreme Judicial Court were faced with the question, it would recognize the fraud on the market theory as a substitute for pleading reliance...." *Id.* at 34. *See also, e.g., Lipton v. Documation, Inc.*, 734 F.2d 740 (11th Cir.1984); *In re Charter Sec. Litig.*, No. 84–448–Civ–J12 (M.D.Fla. October 10, 1985).

Regardless of whether such a presumption is available in common law fraud and misrepresentation cases, this court agrees with the statement of the district court in *In re Activision Sec. Litig.*, 621 F.Supp. 415, 431 (N.D.Cal.1985) that "the proof needed to show reliance under the state common law claims is similar to that needed under the federal claims.... [S]ince 'the similarities between a Rule 10b–5 action and common law fraud outnumber the differences ... [c]lass treatment of both claims will permit efficient presentation of proof on such overlapping issues as defendants' scienter.'" (citing *Dekro v. Stern Brothers & Co.*, 540 F.Supp. 406, 418

(W.D.Mo.1982)). *See also Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1438 (9th Cir.1987). Because common issues predominate even over individual issues of reliance should they later arise, it is appropriate to certify the common law fraud claims for class treatment.

Some defendants also argue that the state law claims should not be certified because under applicable choice of law principles, the laws of the states of each class member's residence might have to be applied. However, the breach of trust claims are governed exclusively by the law of the state of administration of the trust—in this case, South Carolina, where the trust fund was established and administered. W. Fratcher, *Scott on Trusts* §§ 620, 623 (4th ed. 1989). The claims brought under the South Carolina Securities Act, too, are applicable to all the class members and are governed by the law of this state. *See generally Simms Inv. Co. v. E.F. Hutton & Co.*, 699 F.Supp. 543 (M.D.N.C.1988) and *Lintz v. Carey Manor, Ltd.*, 613 F.Supp. 543, 548–51 (W.D.Va. 1985).

Defendants have cited several cases holding that under the *lex loci delicti* choice of law approach, as is used in this state, the applicable law is the state of residence of each class member. A number of courts accordingly have refused to certify plaintiff classes alleging such common law claims, concluding that the individual issues caused by differences in various states' laws predominate over common issues. Other courts have disagreed and concluded that although some differences may exist between various states' approaches to common law fraud actions, such differences are minimal in comparison to the similarities.

The district court in *In re Energy Systems Equip. Leasing Sec. Litig.*, 642 F.Supp. 718 (E.D.N.Y.1986) conducted a review of cases at both ends of the spectrum on this issue and concluded:

> Although the question is a close one, the Court is of the view that, at least in the context of the cases at bar, the rationale of those courts which have certified such

classes is sounder than that which has led other courts to draw an opposite conclusion as to the propriety of certification. Plaintiffs' common-law claims arise out of the same purportedly fraudulent scheme and alleged misrepresentations and omissions that underlie plaintiffs' federal causes of actions. Much of the evidence necessary to establish defendants' liability under federal law will thus be equally necessary for plaintiffs' common-law claims.

*Id.* at 753. *See also, e.g., In re IGI Sec. Litig.*, 122 F.R.D. 451 (D.N.J.1988); *Epstein v. Moore*, [1988–89 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,957, 1988 WL 62213 (D.N.J.1988); *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251 (D.Cal. 1988); *In re New York City Shoes Sec. Litig.*, [1987–88 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 93,670, 1988 WL 17843 (E.D.Pa.1988); *Barkman v. Wabash, Inc.*, 674 F.Supp. 623, 635 (N.D.Ill.1987); *In re LILCO Sec. Litig.*, 111 F.R.D. 663 (E.D.N.Y.1986); *Baum v. Centronics Data Computer Corp.*, [1986–87 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,797, 1986 WL 15784 (D.N.H.1986); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D.Cal.1986).

As this court recognized in *Kitchens v. U.S. Shelter Corp.*, [1983–84 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,547, 1983 WL 1380 (D.S.C.1983), individual questions can be dealt with in subsequent proceedings. Accordingly, it is this court's opinion that the fraud issues that are common to each class member predominate over individual issues, and to the extent the individual issues remain after trial, they can be handled in subsequent proceedings.

## 2. *A Class Action is Superior to Other Methods*

In addition to the requirement that common issues predominate over individual issues, Rule 23(b)(3) requires that the class action method be superior to other methods, such as joinder. To determine this "superiority" issue, Rule 23(b)(3) lists four factors that should be considered:

1. The interest of members of the class in individually controlling the prosecution or defense of separate actions;
2. Litigation already commenced;
3. The desirability or undesirability of concentrating the claims in one forum;
4. The difficulties likely to be encountered in management of a class action.

**a. The Interest of Members of the Class in Individually Controlling the Action**

The losses suffered individually by each of the potential class members would not likely be sufficient to make it practical for the bond purchasers to individually bring the costly and time consuming litigation required to recover in a complex case such as this. The plaintiffs' cost for depositions, photocopying and travel expense alone in all probability will far exceed the amount that the average investor paid for these bonds. It is clear that a class action would be the most appropriate method of securing a remedy. *See, e.g., Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 338, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980), *reh'g denied,* 446 U.S. 947, 100 S.Ct. 2177, 64 L.Ed.2d 804 (1980); *Korn v. Franchard Corp.,* 443 F.2d 1301 (2nd Cir.1971); *Eisen v. Carlisle & Jacquelin,* 370 F.2d 119, 120–21 (2nd Cir.1966), *cert. denied,* 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967).

**b. There is no Substantial Litigation Pending on Behalf of the Class**

Plaintiffs have represented that to their knowledge, no other federal or state court class actions are pending on behalf of the class. As a result, the putative class will not receive the protection it needs unless this case is certified as a class action.

**c. The Desirability or Undesirability of Concentrating the Litigation of the Claim in One Forum**

Concentration of the claims of the class in the United States District Court for the District of South Carolina is desirable. Virtually all of the transactions at issue in this litigation occurred in this district; the project is located in this district; most of the physical evidence is located in this district; and most of the witnesses and defendants are located in this district.

**d. There are no Substantial Difficulties Likely to be Encountered in the Management of this Class Action**

This action is not of an uncommon variety. The size of the class here, close to two thousand investors, is of a fairly common size and is quite manageable. Notice can be given to each member of the class by direct mail in accordance with the trustee bank's bondholder list and by publication in selected newspapers. The form and mechanics of giving such notice can, as is usual in such cases, be resolved by the parties and the court after the determination of this motion.

CONCLUSION

For the reasons discussed above, plaintiffs' motion for class certification is GRANTED. Ritchie and Rediker and Hutcheson & Warren are certified as class counsel, and Gordon and Elizabeth Billipp are certified as representatives of the class. Class counsel are ORDERED and DIRECTED to provide the court with a proposed class notice within twenty (20) days of this Order.

IT IS SO ORDERED.

